638 So.2d 102 (1994)
EMPIRE FIRE & MARINE INSURANCE COMPANY, Appellant/Cross-Appellee,
v.
The INSURANCE COMPANY OF The STATE OF PENNSYLVANIA, and East Coast Intermodal Systems, Inc., a/k/a E.C.I.S., INC., Appellees/Cross-Appellants,
and Luis Carbonell and Robert L. LeCount, Appellees.
Case Nos. 93-2183, 93-1315.
District Court of Appeal of Florida, Third District.
May 24, 1994.
Rehearing Denied July 12, 1994.
Rhea P. Grossman, Miami, for appellant/cross-appellee.
Marlow, Connell, Valerius, Abrams, Lowe & Adler and James Hughes Villacorta and William G. Liston, Miami, for appellees/cross-appellants.
Sperry, Shapiro & Kashi and Joseph S. Kashi, Ft. Lauderdale, for appellee Carbonell.
Before NESBITT, COPE and GERSTEN, JJ.
COPE, Judge.
Empire Fire & Marine Insurance Co. appeals final judgments in a declaratory judgment action to determine the priority of insurance coverage. We affirm in part and reverse in part.
Appellee Luis Carbonell is the owner of a truck-tractor. The owner entered into a lease with appellee East Coast Intermodal Systems, Inc., a carrier operating under an Interstate Commerce Commission permit ("the I.C.C. carrier"). The lease was what is referred to in the industry as a permanent *103 lease. See Wales Transp., Inc. v. Interstate Commerce Comm'n, 728 F.2d 774, 777 (5th Cir.1984); see generally 4 Saul Sorkin, Goods in Transit, § 45.03 (1994) (discussing early and modern day permanent leases).
Under I.C.C. regulations:
Exclusive possession and responsibilities  (1) The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.
49 C.F.R. § 1057.12(c).
Under the terms of the lease, the ownerlessor not only leased the truck-tractor to the I.C.C. carrier, but also contracted to provide a driver for the tractor. Under the lease, the owner was also required to handle all repair and maintenance at the owner's expense.
Under the lease and under I.C.C. regulations, the I.C.C. carrier is required "to maintain insurance coverage for the protection of the public pursuant to Commission regulations under 49 U.S.C. [§] 10927. The lease shall further specify who is responsible for providing any other insurance coverage for the operation of the leased equipment, such as bobtail insurance." 49 C.F.R. § 1057.12(j).
The I.C.C. carrier was insured by appellee The Insurance Company of the State of Pennsylvania ("the truckers' policy"). Under the lease, the owner was responsible for providing bobtail coverage. "Bob-tail/deadhead insurance is a term generally used to describe `non-trucking use insurance.' It is intended to cover the insured when the vehicle is not under load, when it is being serviced, or when it is being used for some other non-revenue purpose." 4 Saul Sorkin, Goods in Transit § 45.01(1), at 45-4 to 45-5 (footnotes omitted). Appellant Empire Fire & Marine Insurance Co. issued a policy to the owner which provided truckers' insurance for non-trucking use ("the bobtail policy").
In June, 1988, while the lease was in effect, there was an accident between the truck-tractor and another motorist, appellee Robert L. LeCount. The owner was driving the truck-tractor at the time of the accident. The tractor was "bobtailing," that is, traveling without a truck-trailer attached to it. The owner was on the way to obtain an oil change for the truck, after which he was to proceed to pick up a load for the I.C.C. carrier. Pursuant to the lease, the truck-tractor was carrying the I.C.C. carrier's placard and operating under the I.C.C. permit at the time of the accident.
LeCount filed a lawsuit for damages arising out of the accident. The tort lawsuit has been resolved and LeCount has been paid.
The truckers' insurer (The Insurance Company of the State of Pennsylvania) and the bobtail insurer (Empire Fire & Marine Insurance Co.) both agreed that their insurance policies provided coverage for this accident. However, the insurers could not agree on the priority of coverage. Accordingly, the bobtail insurer brought a declaratory judgment action. The trial court ruled that the two policies would provide pro rata coverage. The trial court also awarded attorney's fees to the owner, against the bobtail insurer, pursuant to section 627.428, Florida Statutes. The bobtail insurer has appealed. The Insurance Company of the State of Pennsylvania and East Coast Intermodal, Inc. cross-appeal the trial court's pro rata coverage determination, arguing that the bobtail coverage should be primary and the truckers' policy should be excess.
Courts throughout the United States are divided in their approach to insurance coverage issues where trucking equipment is leased to an I.C.C. carrier. See generally 4 Saul Sorkin, Goods in Transit, chap. 45; Empire Fire & Marine Ins. Co. v. Guaranty Nat'l Ins. Co., 868 F.2d 357 (10th Cir.1989). The difficulty arises from the interplay of the applicable I.C.C. regulations, the terms of the lease agreements, and the terms of the insurance contracts. See generally Empire Fire & Marine Ins. Co., 868 F.2d at 361 (The decisional law has "interpreted the effect of [the] ICC endorsement in at least three ways ... [each] compel[ling] dramatically different *104 results, yet each [having] jurisprudential support.")
For present purposes we begin by examining the other insurance clauses of the respective insurance contracts. The truckers' policy provides, in part:
1. This policy's liability coverage is primary for any covered auto while hired or borrowed by you and used exclusively in your business and pursuant to operating rights granted to you by a public authority... .
... .
3. Except as provided in Paragraphs 1 and 2 above, this policy provides primary insurance for any covered auto you own and excess insurance for any covered auto you don't own.
4. When two or more policies cover on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the limit of our policy bears to the total of the limits of all the policies covering on the same basis.
In our view, the first-quoted sentence is the one applicable here. The truck-tractor in this case had been hired by the I.C.C. carrier pursuant to the lease agreement. Under the applicable I.C.C. regulations, any such lease agreement must "provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease." 49 C.F.R. § 1057.12(c)(1). The leased vehicle was thus, pursuant to the regulations, leased for the exclusive use of the I.C.C. carrier in its business and pursuant to the operating rights granted to the I.C.C. carrier by the public authority, namely, the I.C.C.
The I.C.C. carrier argues that the truck-tractor was not being used for the I.C.C. carrier's business because the tractor was on the way to an oil change. Since under the lease the owner was responsible for carrying out the maintenance functions at the owner's expense, the I.C.C. carrier argues that the trip to obtain an oil change takes the matter out of the first sentence of the "other insurance" clause. We disagree.
One of the reasons for the adoption of I.C.C. regulation over the use of leased equipment was to make sure that leased equipment was being properly maintained. See 4 Saul Sorkin, Goods in Transit § 45.02.03; Transamerican Freight Lines, Inc. v. Brada Miller Freight Sys., Inc., 423 U.S. 28, 36-41, 96 S.Ct. 229, 233-36, 46 L.Ed.2d 169 (1975); Empire Fire & Marine Ins. Co., 868 F.2d at 360-63. The oil change is a maintenance function which is a part of the trucker's business, just as it would be if the truck-tractor had been owned by the I.C.C. carrier. See Hartford Ins. Co. v. Occidental Fire & Casualty Co., 908 F.2d 235 (7th Cir.1990) (Driver of tractor was using truck "in the business of" carrier lessee where injury occurred while driver was en route to pick up trailer which had been repaired); St. Paul Fire & Marine Ins. Co. v. Frankart, 69 Ill.2d 209, 13 Ill.Dec. 31, 370 N.E.2d 1058 (1977) (tractor trailer used in business of common carrier at time of accident where driver was returning home from delivering cargo and made short diversion to obtain fuel at a cheaper price). Moreover, maintenance is necessary for the tractor's continued operation in the I.C.C. carrier's business. Accordingly we agree with the trial court that the truckers' policy provides primary coverage in this case.
We part company with the trial court, however, on its conclusion that the bobtail policy also provides primary coverage. The bobtail policy provides, in part:
1. This policy's liability coverage is primary for any covered auto while hired or borrowed by you and used exclusively in your business and over a route or territory, if any, you are authorized to serve by public authority. This policy's liability coverage is excess over any other collectible insurance for any covered auto while hired or borrowed from you by another trucker... .
2. Except as provided in Paragraph 1 above, this policy provides primary insurance for any covered auto you own and excess insurance for any covered auto you don't own

*105 3. When two or more policies cover on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the limit of our policy bears to the total of the limits of all the policies covering on the same basis.
The first quoted sentence does not apply to the owner in this case, but the second sentence does. The truck-tractor in this case had been hired from the owner by the I.C.C. carrier. The I.C.C. carrier's policy provides primary coverage. Under the terms of the bobtail policy, the bobtail policy's coverage is excess.
The trial court had concluded that both policies provided primary coverage and that the two policies would be required to prorate. We agree with the trial court that the truckers' policy is primary, but conclude that the bobtail policy provides excess coverage in this case. We therefore reverse the declaratory judgment in part and remand with directions to enter judgment in accordance with this opinion.
As to the award of attorney's fees to the owner, the appellant concedes that the award is correct. The attorney's fee order in favor of appellee Carbonell is therefore affirmed in its entirety.
Affirmed in part, reversed in part, and remanded for proceedings consistent herewith.