**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

No. 99-20597

---

EMPIRE FIRE AND MARINE INSURANCE COMPANY,

Plaintiff-Appellant,

versus

BRANTLEY TRUCKING, INC., ET AL,

Defendants,

and

BLUE FLASH EXPRESS INC.,
ROBERT LEWIS HARRIS, JR.,
RELIANCE NATIONAL INDEMNITY COMPANY,

Defendants-Appellees.

---

Appeal from the United States District Court
from the Southern District of Texas

---

August 15, 2000

Before EMILIO M. GARZA, DeMOSS, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

This is an appeal from a declaratory judgment action seeking to determine the respective

rights and obligations between two insurance companies: Plaintiff Empire Fire & Marine Insurance

Company ("Empire"), and Defendant Reliance National Indemnity Company ("Reliance"). The case

stems from a vehicle collision involving a jeep and a trailer-tractor rig riding "bobtail"-- trucking parlance for driving the tractor without an attached trailer or chassis. A dispute arose regarding coverage between the insurance carrier for the truck owner and the insurance carrier for the lessee of the truck. Determining that the language of the exclusion in the owner's policy was clear and unambiguous, we find that the exclusionary provision in Empire's policy excluded coverage. We therefore reverse the district court's judgment.

FACTS AND PROCEEDINGS

The facts are undisputed. Robert Harris was employed by Brantley Trucking ("Brantley"), and was driving a truck owned by Brantley which was under lease to haul cargo for Blue Flash Express ("Blue Flash").[1] On the morning of October 7, 1996, Harris was waiting for cargo to load at Blue Flash's terminal yard. Harris had arrived there the night before pulling a load, and slept overnight at the yard. While he was waiting, Harris decided to have his truck serviced. He left Blue Flash's facility bobtailing, had the oil changed, picked up some auto parts, and had some other maintenance work done at a station. On his way back to the Blue Flash facility, Harris' truck collided with a Jeep Cherokee driven by Douglas Keyzer.

Two insurance contracts were in effect at the time of the accident. Reliance had issued an insurance policy to Blue Flash which provided coverage to Blue Flash as a transporter for trucking operations.[2]

---

[1] Blue Flash is a registered Interstate Commerce Commission ("I.C.C.") motor carrier.

[2] Specifically, the language in the Reliance Policy states:

> A. COVERAGE
> We will pay all sums an "insured" legally must pay as damages because of
> "bodily injury" or "property damage" to which this insurance applies,

Empire issued an insurance policy to Brantley which provided insurance coverage for non-trucking operations, and contained a "Business Use" exclusion. [3]

After the accident, Keyzer filed suit against Harris, Brantley Trucking and Blue Flash in state court.[4] Empire defended its insureds Harris and Brantley, subject to a reservation of rights. Reliance did not provide a defense to Brantley or Harris, but Reliance defended its insured, Blue Flash. After negotiation in May of 1998, the state case settled for a total of $625,000. Empire paid $300,000 of the settlement and Reliance paid $325,000.

Empire filed a declaratory judgment suit January 8, 1998, seeking declaration, by virtue of the business use exclusion, that the Empire policy did not provide coverage, a duty to defend, or a duty to indemnify Brantley, Harris or Blue Flash, for the accident forming the basis of the state case, and declaring that Empire and Reliance bear the costs of the state court judgment on a pro-rata basis. Empire also filed for summary judgment.

On February 18, 1999 in its final judgment the district court denied Empire's motion for

---

cause[d] by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

The Reliance policy defines 'insureds' as "[anyone] while using with your permission an 'auto' you own, hire, or borrow...."

[3] The language in the Empire policy states:
B. EXCLUSIONS:
This insurance does not apply to any of the following: ....
13. BUSINESS USE .
"Bodily injury" or "property damage" while a covered "auto" is used to carry property in any business or while a covered "auto" is used in the business of anyone to whom the "auto" is leased or rented."

[4] State case styled as *Douglas Keyzer & Kathryn Keyzer v. Blue Flash Express, Inc. Brantley Trucking, Inc. & Robert Lewis Harris*, C.A. No. 97-17052.

summary judgment, finding as a matter of law that no exclusion in Empire's policy precluded primary coverage for the truck accident made the basis of the underlying suit, resulting in a take nothing judgment. Empire appealed.

DISCUSSION

Before us is an appeal from a declaratory judgment action in which federal jurisdiction was based on the parties' diversity of citizenship, thus per *Erie,* Texas law applies. 28 U.S.C. §1332, *Assicurazioni Generali, S.p.A v. Ranger Ins. Co.* , 64 F.3d 979, 980 (5th Cir. 1995); *generally Erie R.R. Co. v. Thompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 118 (1938).  Under Texas law, "[i]nsurance policies are contracts, and their constructions are governed by ordinary contract principles."*Gomez v. Hartford Company of the Midwest,* 803 S.W.2d 438, 441 (Tex.1991)(citation omitted).  We review the district court's interpretation of the contract *de novo,* as that involves determinations of legal questions. *See Rutgers State Univ. v. Martin Woodlands Gas Co.*, 974 F.2d 659, 661 (5th Cir. 1992).[5]

The pertinent language in Empire's policy excludes coverage "while a covered 'auto' is used in the business of anyone to whom the 'auto' is leased or rented."  Reliance argues that applying the phrase "in the business of" to the facts of this case creates more than one reasonable interpretation

---

[5] Empire assumes we will review the denial of their motion for summary judgment, as asserted in their statement and treatment of issues.  With few exceptions not applicable here, a trial court's denial of a summary judgment motion is not reviewable on appeal. *In re Yarn Processing Patent Validity Litigation*, 541 F.2d 1127, 1138 (5th Cir.  1976), cert. denied  97 S.Ct. 2976, 433 U.S. 910, 53 L.Ed.2d 1094 ("...interlocutory in nature, non-appealable, and thus not properly before this court....") *In re Corrugated Container Antitrust Litigation*, 694 F.2d 1041 (5th Cir. 1983)(Denial of a summary judgment motion is not a final order, but rather determines only that the movant is not entitled to a judgment as a matter of law and that there are triable issues of fact to be resolved.) *See in general,* WRIGHT & MILLER TREATISE MAIN VOLUME, FEDERAL PRACTICE AND PROCEDURE, § 2715 (Rule 56).  The legal propriety of the district court's final judgment is the sole issue before us.

of the policy language, thus the provision itself is ambiguous. As the district court found, the question of whose business Harris was pursuing at the time of the wreck created two reasonable interpretations; either Harris was not engaged in Blue Flash's business because he was riding bobtail (not carrying a load) or Harris was engaged in Blue Flash's business because he was performing work (maintenance), that would ultimately benefit the interests of Blue Flash. The district court's finding of ambiguity, resulted in favor of providing coverage, since it is well accepted that "[a] contract is ambiguous if, after applying the rules of contract interpretation, a provision remains reasonably susceptible of two meanings." *Gomez,* 803 S.W.2d at 442 (Tex. 1991). Texas courts have further recognized that when an ambiguity exists, the dispute is resolved against the drafter, or in favor of providing coverage. *Duzich v. Marine Office of America Corp.*, 980 S.W.2d 857, 868 (Tex.App.1998)(meaning of exclusionary clause was ambiguous, and thus construed against insurer.)

We disagree with the district court's finding that the language contained in the Empire policy is ambiguous.[6] The language of the "Business Use" exclusion is plain. That "contractual language may, on occasion, pose difficult factual applications..." and that the parties disagree as to coverage, does not create ambiguity. *Hartford Ins. Co. v. Occidental Fire & Ca. Co.*, 908 F.2d 235, 239 (7th Cir. 1990). As in all contract cases, we first look to the language of the contract itself, and "[w]hen there is no ambiguity, it is [our] duty to give the words used their plain meaning." *See Sharp v. State*

---

[6] Other courts have considered similar and identical language and assumed that the language was clear. *See Hartford Ins. Co. v. Occidental Fire & Ca. Co.*, 908 F.2d 235 (7th Cir. 1990); *National Continental Ins. Co. v. Empire Fire and Marine Ins. Co.,* 157 F.3d 610 (8th Cir. 1998); *Prestige Cas. Co. v. Michigan Mutual Ins. Co.*, 99 F.3d 1340 (6th Cir. 1996); *Le Blanc v. Bailey*, 700 So.2d 1311 (La. App.–4th Dist.1997).

*Farm Fire and Casualty Insurance Company*, 115 F.3d 1258, 1261(1997)(quoting *Puckett v. U.S. Fire Insurance Co.*, 678 S.W.2d 936, 938 (Tex.1984)).

The policy at issue is a lease agreement entitled "Insurance for Non-Trucking Use", commonly referred to as a bobtail policy. The fact that Blue Flash was leasing the truck, is evidence that it was being used in pursuit of Blue Flash's business interests. Under the terms of the policy, Empire agrees in a general coverage provision subsection A, to pay all sums an insured must pay as liability for bodily injury or property damage caused by an accident, to which the insurance applies, resulting from the ownership, maintenance or use of a covered vehicle. Subsection B, "Exclusions" begins "This insurance does not apply to any of the following:.." and contains exclusion "13. Business Use" which bars coverage for: "Bodily injury" or "property damage"while a covered 'auto' is used to carry property in any business or while a covered 'auto' is used in the business of anyone to whom the 'auto' is leased or rented."

The portion of the exclusion which we are concerned with in this case "while the covered 'auto' is used in the business of anyone to whom the 'auto' is leased or rented[]"-- clearly refers to occasions when the truck is being used to further the commercial interests of the lessee. This was precisely the case here, where Harris was only biding his time while the cargo loaded, had the truck maintenanced, and was en route back to Blue Flash's yard to pick up the load when the accident occurred. *See Hartford*, 908 F.2d at 235 (Driver of truck was using truck in the business of carrier lessee where injury occurred while driver was en route to pick up trailer which had been repaired.); *Empire Fire & Marine Ins. Co. v. the Insurance Co. of the State of Pennsylvania*, 638 So.2d 102, 104 (3rd Dist. Ct. Fla.1994)("One of the reasons for the adoption of the I.C.C.

-6-

regulation over the use of leased equipment was to make sure that leased equipment was being properly maintained. The oil change is a maintenance function which is part of the trucker's business, just as it would be if the truck tractor had been owned by the I.C.C. carrier.") (internal citations omitted).

It is also apparent that the lease contemplates occasions when the rig although leased, would not be engaged in the business of another, which is when Empire's general coverage applies. Although Harris' actions were placed within Blue Flash's commercial interests, had he been out pursuing leisurely engagement, he would not be 'in the business of' Blue Flash. *See Liberty Mutual v. Connecticut Indemnity Co.*, 55 F.3d 1333, 1337 (7th Cir. 1995)("It was not as though [the driver] had the freedom to drive his semi-tractor hither and yon in search of other fulfillment. At the time of the accident, [the driver] was directly on his way to pick up the trailer, apparently using a normal route for that purpose...." *Lime City Mut. Ins. Co. v. Mullins,* 615 N.E.2d 305, 307-308 (Ohio App.-1992)("clearly, [the driver] was not off on some independent adventure through the countryside. He was operating a truck leased to Jones, headed toward a Jones terminal knowing he was next on the list to haul a load to Chicago, and knowing that timing was important.") We are satisfied from the undisputed facts that Harris' actions were in furtherance of Blue Flash's business. Considering the policy as a whole, we conclude that the meaning of the general coverage provision is plain and is in harmony with the "Business Use" exclusion, and that provision is unambiguous.

As for the portion of the "Business Use" exclusion which does not apply in this case, "'Bodily injury' or 'property damage' while a covered 'auto' is used to *carry property* in any business..."(emphasis supplied) we note the similarity of this language to that contained in the policy at issue in *Assicuarazioni Generali, S.p.A v. Ranger Insurance*, 64 F.3d 979 (5th Cir. 1995), which

Reliance contends binds us, urging that we find ambiguity in Empire's policy and affirm the lower court. Although *Assicuarazioni Generali* was also a bobtail case with competing policies, one maintained by the lessor for "non-trucking" use and one maintained by the lessee for commercial auto use, the "non-trucking" policy had an exclusion clause whereby any person "engaged in the *business of transporting property* by auto for others[]" would not be covered under the policy.(emphasis supplied). The policy's requirement that the truck actually be engaged in transporting property makes the policy language in that case significantly different from what we have here. In *Assicuarazioni Generali* we held that the exclusionary provision was subject to more than one reasonable interpretation, in light of the facts presented. In the present case we find no such ambiguity.

For the reasons assigned we REVERSE, for proceedings consistent with this opinion.