United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 22, 2006**

Charles R. Fulbruge III
Clerk

In the
# United States Court of Appeals
for the Fifth Circuit

_____

m 05-30192

_____

PHILLIP COMEAUX, II, ET AL.,

Plaintiffs,

VERSUS

COIL TUBING SERVICES, LLC, ET AL.,

Defendants,

ELEVATING BOATS, LLC,

Defendant-
Counter Plaintiff-
Appellee-
Cross-Appellant,

VERSUS

ENERGY PARTNERS, LTD,

Defendant-
Counter Defendant-
Appellant-Cross-Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana
m 2:02-CV-1790

Before JOLLY, HIGGINBOTHAM, AND SMITH,
  Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Energy Partners, Ltd.("Energy Partners"),
and Elevating Boats, LLC ("Elevating
Boats"), appeal a judgment resolving an in-
demnity dispute. We affirm.

I.

A flash fire occurred on the deck of the
Mike Martin Elevator, a jack-up vessel owned
and operated by Elevating Boats that was in-
volved with work with Coil Tubing Services at
an Energy Partners well pursuant to the Blan-
ket Time Charter agreement between Energy
Partners and Elevating Boats. Under the
agreement, Elevating Boats was to provide
vessel service for Energy Partners' wells. Phil-
lip Comeaux was one of the Coil Tubing
Services employees working on the vessel. He
and his crew were monitored by Milton Hodg-
es.

After completing an acid job, Hodges in-
structed Comeaux to bleed off pressure from
the well. Comeaux was working on the deck
of the Mike Martin when he noticed an un-
usual amount of gas escaping from the bottom
of the gas buster; he climbed onto the return
tank next to Hodges to investigate, whereupon
a flash fire erupted.

Comeaux jumped from the return tank onto
the choke manifold to shut off the flow of gas,
then reached for a fire extinguisher. It was
empty, however, so he ran to search for an-
other one. In doing so he collided with several
objects, apparently including some 55-gallon
drums located on the deck. Although a func-
tional fire extinguisher was ultimately found,
several of the extinguishers Comeaux and his
team tried to use were empty or unusable.

Comeaux allegedly suffered injuries from
the incident and sued, claiming, *inter alia*, the
following facts as to the negligence of Elevat-
ing Boats: "d. Failing to provide complainant
with a safe place to work; e. Allowing an un-
safe condition to exist on board the jack-up,
Mike Martin; f. Failing to have complainant
sent in after being injured; and g. Failing to
have fire extinguishers up to code." Further,
Article 14 of the Complaint provided: "In ad-
dition to the acts and/or omissions of negli-
gence complained of hereinabove, complain-
ant, Phillip Comeaux, II, asserts that the un-
seaworthy conditions of the jack-up rig, Mike
Martin, caused and contributed to his accident
and related injuries."

Comeaux dismissed Energy Partners early
in the suit. He later settled his claims against

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has de-
termined that this opinion should not be published
and is not precedent except under the limited cir-
cumstances set forth in 5TH CIR. R. 47.5.4.

Elevating Boats for $150,000, to be paid by Elevating Boats or Energy Partners, depending on the outcome of the contractual indemnity dispute between those parties. To resolve the contract dispute, Elevating Boats and Energy Partners consented to a bench trial based on the briefs.

The district court interpreted the Indemnity provision of the Blanket Time Charter agreement to provide that Energy Partners did not have to indemnify Elevating Boats for claims based on the breach of the warranty of seaworthiness. The court further held that Comeaux's claim against Elevating Boats for injuries arising from failure of the fire extinguisher(s) to comply with Coast Guard regulations was basically a claim for breach of the warranty of seaworthiness, and was therefore not indemnifiable by Energy Partners. It also held that Comeaux's claim against Elevating Boats for injuries arising out of his collision with objects on the deck of the boat, in particular the drums, was indemnifiable because it was a claim by an employee of a subcontractor of Energy Partners and was unrelated to Elevating Boats' breach of the warranty of seaworthiness.

The court found Comeaux's injuries attributable to Elevating Boats in the following manner: 50% by the absence of a working fire extinguisher (causing burns) and 50% by the collision with the drums (causing back pain, etc.). *Id.* Therefore, Energy Partners had to indemnify Elevating Boats for 50% of its settlement costs. *Id.*

Both parties appeal. Energy Partners argues that the court erred as a matter of law by awarding Elevating Boats 50% indemnity despite the court's factual finding that Comeaux's injuries arose from Elevating Boats' breach of the duty of seaworthiness. Energy

Partners also contends there is no evidence to support the district court's conclusion that Energy Partners is obligated to defend and indemnify Elevating Boats for that portion of Comeaux's injuries sustained by actions unrelated to Elevating Boats' breach of the warranty of seaworthiness. As cross-appellee, Energy Partners defends the district court's decision that it did not have to indemnify Elevating Boats for Comeaux's injuries related to the breach of the warranty of sea worthiness.

As cross-appellant, Elevating Boats argues that the Blanket Time Charter agreement is ambiguous on the issue of whether Energy Partners must indemnify Elevating Boats for claims against the latter based on the breach of the warranty of seaworthiness. Elevating Boats urges that for that reason, the agreement should be construed against Energy Partners, the drafter, and therefore should require Energy Partners to indemnify Elevating Boats for those claims. Elevating Boats also avers that there is no evidence that any injuries resulted from the collision with the drums. As appellee, Elevating Boats defends the district court's decision that Energy Partners has to indemnify Elevating Boats for Comeaux's injuries related to the collision with the drums.

II.

A.

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed de novo." *In re Mid-South Towing Co.*, 418 F.3d 526, 531 (5th Cir. 2005) (quoting *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 601 (5th Cir. 2000)). Clear error exists if (1) the findings are without substantial evidence to support them, (2) the court misapprehended the effect of the evidence, and (3) although there is evidence which if credible would be substantial, the force and effect of

the testimony, considered as a whole, convinces the court that the findings are so against the preponderance of credible testimony that they do not reflect or represent the truth and right of the case. *Moorhead v. Mitsubishi Aircraft Int'l, Inc.*, 828 F.2d 278, 283 (5th Cir. 1987). Reversal for clear error is warranted only if the court has "a definite and firm conviction that a mistake has been committed." *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 375 (5th Cir. 2000) (citing *Mid-Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 229 (5th Cir. 2000)).

## B.

Elevating Boats argues that the contract does not provide unambiguously that Elevating Boats' breaches of the warranty of seaworthiness are not indemnifiable by Energy Partners. We disagree with Elevating Boats' position.

"A basic principle of contract interpretation in admiralty law is to interpret, to the extent possible, all the terms in a contract without rendering any of them meaningless or superfluous." *Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 (5th Cir. 2004) (citing *Foster Wheeler Energy Corp. v. AN NING JIANG MV*, 383 F.3d 349, 354 (5th Cir. 2004); *Capozziello v. Brasileiro*, 443 F.2d 1155, 1159 (2d Cir. 1971)). "[A] freely negotiated private international agreement, unaffected by fraud, undue influence, or overwhelming bargaining power . . . should be given full effect." *Foster Wheeler Energy Corp.*, 383 F.3d at 354–55 (quoting *M/S BREMEN v. Zapata Off-Shore Co.*, 407 U.S. 1, 12–13 (1972)) (additional citations omitted). "A contract is construed against the drafting party only when it is ambiguous." *Chembulk*, 393 F.3d at 555 n.6 (citing *Empire Fire & Marine Ins. Co. v. Brantley Trucking, Inc.*, 220 F.3d 679, 681 (5th Cir. 2000)). A contract is not ambiguous if "its language as a whole is clear, explicit, and leads to no absurd consequences, and as such it can be given only one reasonable interpretation." *Id.* (citing *Mobil Exploration & Producing v. A-Z/Grant Int'l Co.*, 1993 AMC 1137 (E.D. La. 1992) (citing *Nat'l Union Fire Ins. Co. v. Circle, Inc.*, 915 F.2d 986, 989 (5th Cir. 1990) (per curiam))).

The agreement provides as follows:

INDEMNITIES: (A) [Elevating Boats'] Indemnity ObligationSSTo the fullest extent permitted by applicable laws, [Elevating Boats] shall save, protect, defend, indemnify, and hold [Energy Partners], its co-venturers, co-operators and partners, and their officers, employees, agents, representatives and subcontractors (for the purposes of this clause, the "Indemnitees") harmless from and against all Claims even though such Claims may, in whole or in part, be caused by, or based or premised on, the <u>ACTIVE, PASSIVE, SOLE OR CONCURRENT NEGLIGENCE OR OTHER LEGAL FAULT, OF EVERY KIND AND CHARACTER, OF ONE OR MORE INDEMNITEES</u>. The term "Claims" under this Section (a) means all claims, liabilities, judgments, damages, causes of action, fines, penalties, losses, costs, and expenses (including, without limitation, attorneys' fees, costs of witnesses, costs of discovery, and costs of court) sustained, incurred, or threatened against any Indemnitee for, with respect to, or arising out of, directly or indirectly, (A) the death or personal injury to any of [Elevating Boats'] or any of its subcontractors' personnel, employees, representatives, agents or invitees and/or (B) the breach or violation by [Elevating Boats] of its obligations, covenants, and/or warranties under this charter.

4

(B) To the fullest extent permitted by applicable laws, [Energy Partners] shall save, protect, defend, indemnify, and hold [Elevating Boats], its officers, employees, agents and representatives (for purposes of this clause and unless otherwise noted, the "Indemnitees") harmless from and against all Claims even though such Claims may, in whole or in part, be caused by, or based or premised on, the ACTIVE, PASSIVE, SOLE OR CONCURRENT NEGLIGENCE OR OTHER LEGAL FAULT, OF EVERY KIND AND CHARACTER, OF ONE OR MORE INDEMNITEES. Except as limited below and subject to the provisions of OWNER'S DUTIES AS TO MANAGEMENT, OPERATION AND NAVIGATION OF VESSEL above, the term "Claims" under this Section (b) means all claims, liabilities, judgments, damages, causes of action, fines, penalties, losses, costs, and expenses (including, without limitation, attorney's fees, costs of witnesses, costs of discovery, and costs of court) sustained, incurred, or threatened against any Indemnitee for, with respect to, or arising out of, directly or in directly, the death of or personal injury to any of [Energy Partners'] or any of its subcontractors' (other than the above-named Indemnitees) personnel, representatives, agents or invitees. The term "Claims" under this Section (b) does not include any of the categories of Claims as defined in Section (a)(A) and/or Section (a)(B), for which Indemnitees under Section (a) of this INDEMNITEES [sic] provision are indemnified by Elevating Boats.

Because Elevating Boats is seeking indemnity from Energy Partners, that claim is governed by Paragraph (B), under which Energy Partners must indemnify Elevating Boats for all "Claims" arising from injury to any of Energy Partners' or any of its subcontractors' personnel, representatives, agents or invitees. Comeaux's claim falls under this provision because he is either an employee of a subcontractor of Energy Partners (Coil Tubing) or an invitee of Energy Partners.

In this Paragraph (B), "Claims" is defined as "all claims for, with respect to, or arising out of, directly or indirectly, the death of or personal injury to any of [Energy Partners'] or any of its subcontractors' . . . personnel, representatives, agents or invitees." Further, the term "'Claims' under this Section (b) does not include any of the categories of Claims as defined in Section (a)(A) and/or Section (a)(B), for which Indemnitees under Section (a) of this INDEMNITEES [sic] provision are indemnified by [Elevating Boats]."

Under this express exception from its duty to indemnify, Energy Partners need not provide indemnity for "categories of Claims" under section (a)(A) and/or section (a)(B), for which Energy Partners and other Indemnitees under section (a) are indemnified by Elevating Boats. Section (a)(B) includes claims for breaches of "warranties under this charter" by Elevating Boats. One of the warranties under the Blanket Time Charter is the warranty of seaworthiness, which Elevating Boats owes to Energy Partners.[1] Therefore, Energy Partners

---

[1] The warranty is as follows:

[Elevating Boats] hereby warrants that the vessel(s) is/are now, and at all times during the term of this charter will be maintained by [Elevating Boats], at [Elevating Boats'] expense, properly staunch, strong, and in all respects seaworthy and in good repair and running condition; and shall comply in all respect with the requirements, if any, of the United States Coast

(continued...)

5

has no duty to indemnify Elevating Boats for a breach of the warranty of seaworthiness.

Under section (a)(B), Elevating Boats must indemnify Energy Partners not only for claims by employees or agents of Elevating Boats, but also for claims by employees or agents of Energy Partners if the claims are for breaches of warranty. As the district court explained, this is not a regular knock-for-knock indemnity agreement whereby each party would indemnify the other for claims brought by its employees or subcontractors' employees. Rather, as section (a)(B) provides, Elevating Boats must indemnify Energy Partners—even for claims by Energy Partners's employees or agents—if those claims are based on a breach of the warranty of seaworthiness.

As under section (a)(B), Energy Partners *is owed* indemnification for claims of its employees/agents based on breach of warranty, it cannot also be true that Energy Partners *owes* indemnification under section (b) for claims of its employees/agents based on breach of this warranty. Therefore, the "exclusion" in section (b) merely serves to clarify that there is no inconsistency between section (a) and section (b): Under the exclusion, there is no requirement that Energy Partners indemnify Elevating Boats—even if an employee of Energy Partners sues Elevating Boats—if the claim is based on a breach of the warranty of seaworthiness. Therefore, the language of the exclusion is plain and unambiguous and commands the interpretation provided by the district

court.

Elevating Boats contends, however, that there is an ambiguity in the indemnity provision and urges us to read the exclusion in section (b) as follows: "Although Energy Partners owes indemnity to Elevating Boats if an employee of Energy Partners'[] contractor sues Elevating Boats, this rule does not apply if the contractor happens to be Elevating Boats itself." This argument is without merit, because the sentence preceding the exclusion in section (b) already yields that result. That sentence provides that Energy Partners must indemnify Elevating Boats under section (b) for "claims sustained, incurred, or threatened against any Indemnitee" arising out of "the death of or personal injury to any of [Energy Partners's] or any of its subcontractors' (*other than the above-named Indemnitees*) personnel, representatives, agents or invitees" (emphasis added). Because under section (b), Elevating Boats is one of the "above-named Indemnitees," Energy Partners has no obligation to reimburse claims arising from the death of an employee/agent of Elevating Boats. Therefore, we will not interpret the exclusion so as to render the preceding sentence superfluous.

Elevating Boats also argues that "Claims" under section (a)(A) and/or section (a)(B) are only claims "against any Indemnitee" under section (a). Accordingly, Elevating Boats reasons that the exclusion in section (b) does not apply to Elevating Boats because Elevating Boats is not an "Indemnitee" under section (a).

This interpretation is incorrect. By definition, claims for which indemnity is required under section (b) are against an Indemnitee under section (b), namely Elevating Boats and its officers/representatives. Thus, section (b) already excludes claims against Indemnitees

---

[1](...continued)
Guard covering vessels of its type . . . . In light of this express exception to Energy Partners' duty to indemnify, the district court correctly concluded that a claim against Elevating Boats for breach of the warranty of seaworthiness is not indemnifiable by Energy Partners.

under section (a), namely Energy Partners and its partners and co-venturers and their officers/representatives. This is because Elevating Boats is not a co-venturer and partner of Energy Partners.

Accordingly, interpreting the exclusion in section (b) to mean that only certain claims against an Indemnitee under section (a) are excluded would render this provision superfluous: Claims against an Indemnitee under section (a) are already excluded by the definition of an Indemnitee under section (b). Thus, the interpretation proposed by Elevating Boats is contrary to the principles of contract interpretation discussed above.[2]

Elevating Boats further urges that the indemnity provision is ambiguous because the words "against all Claims even though such Claims may, in whole or in part, be caused by, or based on premised on, the ACTIVE, PASSIVE, SOLE OR CONCURRENT NEGLI-

GENCE OR OTHER LEGAL FAULT, OF EVERY KIND AND CHARACTER, OF ONE OR MORE INDEMNITEES" strongly suggest that *all* claims against Elevating Boats would be indemnified. This argument fails, because "all Claims" does not mean strictly "all claims," but instead all claims that fit within the definition of "Claims." "Claims" in this particular context is defined to exclude claims for breach of warranties made by Elevating Boats in the charter.

### III.

Elevating Boats contends that the district court committed clear error in finding that some of Comeaux's injuries resulted from his collision with the drums. The court determined that "Energy Partners has presented enough evidence to satisfy its burden of proving that Comeaux likely sustained at least a share of his injuries from colliding with the drums." This factual finding must stand unless clearly erroneous. FED. R. CIV. P. 52(a); *Canal Barge Co.*, 220 F.3d at 375.

### A.

There is sufficient evidence to support the finding that some of Comeaux's injuries resulted from the collision with the drums. Comeaux testified that when he ran across the deck to find another fire extinguisher, he hit "everything." He also testified that he hit three fifty-five-gallon drums on the deck. Also, the record includes doctors' analyses of medical scans and other reports showing injury to his lower back regions, and demonstrating that he was undergoing physical therapy and received strong medication for his back pain.

Further, about two months after the accident and six months before suing, Comeaux saw a doctor, whose notes state "[t]hen began running due to fire. Hit 2 fifty-five gallon

---

[2] Also, the exclusion in section (b) is for "categories" of Claims under section (a)(B), not for Claims against an actual Indemnitee under section (a)(B). "Categories of Claims" under section (a)(B) are the three categories mentioned in that section: (1) breach of obligations, (2) breach of covenants, and (3) breach of warranties under the Blanket Time Charter. Comeaux's claim against Elevating Boats at issue here is for breach of the warranty of seaworthiness. That claim falls within a category of claims under section (a)(B), which is therefore excluded under section (b). Although the exclusion states that Energy Partners does not owe indemnification for those categories of claims under section (a)(B) "for which *Indemnitees* under section (a) of this INDEMNITEES [sic] provision are indemnified by [Elevating Boats]," this language does not negate the fact that it is "categories" of claims that are excluded, not actual claims against particular Indemnities.

7

drums. Attempted to run but RLE too much pain." Two days later, Comeaux reported the same collision with drums to his physical therapist. There is evidence that he reported the same story to other doctors later.

Elevating Boats objects to this testimony as hearsay. We review evidentiary rulings for abuse of discretion. *Johnson v. Ford Motor Co.*, 988 F.2d 573, 578 (5th Cir. 1993). The office notes and the other statements to doctors are admissible as statements made for the purpose of treatment, because the statements are of the type pertinent to Comeaux's physician in providing treatment. FED. R. EVID. 803(4); *cf. Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 272 (5th Cir. 1991).[3] In his comments to the doctors, Comeaux did not attribute fault, but merely explained how the injury came about, which is relevant to diagnosis or treatment.

Elevating Boats counters that the hearsay exception should not apply because there is a discrepancy between the early and later versions of Comeaux's story. We see no such discrepancy: Comeaux never denied, in his earlier accounts of his injuries, that he had

collided with the drums. Moreover, although Comeaux did not report the collision to doctors in the first seven weeks after the accident, he did report it consistently thereafter, which was six months in advance of filing suit. Comeaux's statement to Dr. Shutte that he did not know "when" he started to have pain in his back and pain during the accident does not contradict the fact that he had such pain or that he collided with the drums.

We are also unconvinced by Elevating Boats' argument that Comeaux was self-interested in making the statements to the doctors because he wanted to add Elevating Boats to the lawsuit. Comeaux already had a basis for a strict liability claim against Elevating Boats for the burns he suffered from the absence of a working fire extinguisher on Elevating Boats' vessel. Also, because Comeaux's statements were made six months before filing suit, and close to the accident, they are less likely to have been made for litigation purposes as opposed to being made to obtain treatment. In any event, the fact that a statement is made to a doctor for the purposes of litigation is a matter of weight and not of admissibility, so long as the statements are pertinent to diagnosis. 4 STEPHEN A. SALTZBURG ET AL., FEDERAL RULES OF EVIDENCE MANUAL § 803.02[5][c] (8th ed. 2002).

Elevating Boats also argues that Comeaux's evidence was not credible because he made false statements to medical providers in the past when he said he did not have back and neck problems before the accident. Even assuming, however, that these statements were lies rather than simple mistakes, there is no proof that these past "lies" were related to this lawsuit. Therefore, the district court did not abuse its discretion in admitting the statements made to medical providers.

---

[3] Hearsay is generally inadmissible, FED. R. EVID. 802, because oath, personal appearance at trial, and cross-examination are the best mechanisms to ensure truthful and accurate testimony. Nevertheless, some classes of hearsay are excluded from rule 802's prohibition against the admissibility of hearsay. Rule 803 excludes certain types of statements from the hearsay ban even though the declarant is available as a witness, primarily because under certain circumstances, a statement, although it is hearsay, may still possess circumstantial guarantees of trustworthiness sufficient to justify its admission as evidence. *Moss v. Ole S. Real Estate, Inc.*, 933 F.2d 1300, 1309-10 (5th Cir. 1991).

Furthermore, even if the statements were inadmissible, Comeaux testified in the deposition that he was hitting everything on the deck and that he hit the drums. Accordingly, the medical statements merely corroborate his testimony under oath.[4] Therefore, there is substantial evidence to support the finding of injuries resulting from a collision with the drums, and the district court did not misapprehend the effect of that evidence.

B.

Because there is no clear error under prong (1) or (2) of the clear error test,[5] Elevating Boats' other challenges must be considered under prong (3): If, although the evidence discussed above would be substantial if credible, the force and effect of the testimony, consid-

---

[4] Elevating Boats suggests that Comeaux's medical statements are not admissible because he did not testify from personal knowledge. Elevating Boats points to no evidence that Comeaux did not have any personal knowledge of a collision in which he was involved, other than his statement that at the time of the accident he did not realize he had collided with the drums until ten minutes after the collision, when John Walker told him. Although Comeaux stated that Walker had told him of the alleged collision ten minutes after it allegedly occurred, it does not mean that Comeaux did not independently recall the collision later. Comeaux did not testify that he believed that the collision occurred based only on Walker's comments.

[5] As discussed, clear error exists if (1) the findings are without substantial evidence to support them, (2) the court misapprehended the effect of the evidence, and (3) if, although there is evidence which if credible would be substantial, the force and effect of the testimony, considered as a whole, convinces the court that the findings are so against the preponderance of credible testimony that they do no reflect or represent the truth and right of the case. *Moorhead*, 828 F.2d at 283.

ered as a whole, convinces the court that the findings are so against the preponderance of credible testimony that they do no reflect or represent the truth and right of the case. Elevating Boats argues that Comeaux's statements discussed above are unreliable because the only three men on the deck at the time of the explosion did not see Comeaux collide with the drums. But, these three men admitted that they did not see Comeaux at all once he began running on the deck, because they were running in opposite directions.

Hodges testified that he did not see Comeaux after the fire erupted because he was running in a different direction. Von Harper recounted that he ran with Hodges. This suggests that Von Harper also did not see Comeaux. Von Harper also stated that he could not see well because it was pitch dark, and that he had to turn his head to watch where he was going to get the fire extinguisher. This testimony, to the effect that Hodges and Von Harper did not see a collision because they were not looking in the direction of the collision, does not contradict therefore Comeaux's statement that the collision occurred.

Although John Walker testified that Comeaux did not run into any drums, he also indicated that he fled the boat immediately after the eruption because he was scared, and he was about forty feet from the fire when he turned around. In light of Walker's contradictory testimony, the district court committed no clear error in discounting the credibility of the Walker testimony and believing that of Comeaux. Therefore, the preponderance of credible testimony does not contradict the evidence relied on by the district court.

IV.

Energy Partners argues that the district court erred in awarding Elevating Boats 50%

9

indemnity despite the factual finding that Comeaux's injuries arose from Elevating Boats' breach of the duty of seaworthiness. This claim misstates the court's factual findings.

Although it did find that Comeaux's burns resulted from the breach of the warranty of seaworthiness, the court found that some other injuries, including Comeaux's back pain, might have arisen from the collision with the drums, which the court described as "unrelated to the breach" of the warranty of seaworthiness. Further, the court required that Energy Partners indemnify Elevating Boats only for those latter injuries. Therefore, because the court did not award indemnity for claims based on the breach of the warranty of seaworthiness, it did not err as a matter of law.

Energy Partners' actual discussion of this issue could be read to suggest that the collision with the drums arose from Elevating Boats' breach of its warranty of seaworthiness, not from some other type of unrelated negligence.[6] The law of this circuit, however,

is that a district court or jury may find that a vessel owner is negligent in having a cluttered deck, yet not so utterly negligent as to be deemed as having rendered the vessel unseaworthy or unfit for "its intended use."[7]

As the *Simeon* court explained, although the shipowner has an absolute duty to provide a seaworthy vessel, the vessel need not be "'accident-free.'"[8] The duty of seaworthiness is only a duty "to furnish a vessel and appurtenances reasonably fit for their intended use. The standard is not perfection, but reasonable

---

[6] In its brief, Energy Partners argues that it

. . . presented evidence which the trial court found by a preponderance that Elevating Boats was negligent . . . . [T]he facts and evidence presented by Energy Partners proved that the fire extinguishers on the deck of the Mike Martin Elevator were either inoperable or not functioning correctly, and that Mr. Comeaux *sustained a share of his injuries from colliding with the drums . . . .*

Further, the trial court correctly determined that not only was Elevating Boats' *negligence* a breach of the duties it owed to Mr. Comeaux, but also, more importantly, it *was a breach of its contractual warranty of seaworthiness* owed to Energy Partners.

(continued...)

---

(...continued)
Contrary to Energy Partners' claim, the district court never actually decided that the negligence that caused the collision with the drums occurred from a breach of the warranty of seaworthiness. Rather, the court specifically noted that the collision with the drums arose from negligence "unrelated" to that breach.

[7] *Simeon v. T. Smith & Son, Inc.*, 852 F.2d 1421, 1433 (5th Cir. 1988) (stating that a reasonable jury can find negligence based on iron ore scattered on deck and a knot in the mooring line and "still conclude that the [vessel] was 'reasonably fit' for its intended use as a derrick barge"). The "warranty of seaworthiness" covers all parts of the vessel and its operation, including the hull, machinery, appliances, gear and equipment, and other appurtenances. The duty of seaworthiness is implicated where cargo is improperly loaded or stowed, and a statutory or regulatory violation may amount to unseaworthiness *per se*. The warranty of seaworthiness extends to manning the vessel; an incompetent or inadequate master or crew may render the vessel unseaworthy.

[8] *Id.* (citing *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539 (1960)).

10

fitness . . . ."[9] Not all forms of negligence can render a vessel unseaworthy. In *Brunner v. Maritime Overseas Corp.*, 779 F.2d 296, 298 (5th Cir. 1986), this court explained that "We do not have the right to second guess a jury that *may decide a small oil spill on a deck does not necessarily make an 80,000 ton tanker unseaworthy* even if the spill got there negligently."[10]

V.

Energy Partners claims it had no duty to indemnify Elevating Boats for Comeaux's injuries based on the collision with the drums, because the district court did not mention how those injuries were "attributable in any way to Elevating Boats." The district court found that Comeaux sustained at least a share of his injuries from the collision with the drums. Although the court did not explain precisely that the claim against Elevating Boats based on the collision with the drums was premised on Elevating Boats' negligent maintenance of the deck (which was cluttered), it was implicit in the decision ordering indemnification. Indemnification can be ordered only if there is a claim premised, in whole or in part, on the "active, passive, sole or concurrent negligence or other legal fault, of every kind and character" of Elevating Boats.

Contrary to Energy Partners' assertions, Comeaux's injuries resulting from the collision with the drums are not solely based on the negligence of third parties. Rather, Comeaux's complaint, which alleges that Elevating Boats allowed an unsafe condition, encompasses a claim of negligence based on a cluttered deck.

The captain of the vessel testified he was aware that the deck became cluttered when Coil Tubing and Energy Partners overcrowded it with equipment, but that he did not object because there were some walkways that permitted workers to traverse the deck. He also testified that he had the authority to order some of the equipment removed if he believed its position was a safety hazard because it obstructed the walkway.

Thus, even if a third party caused the deck to be cluttered, Elevating Boats, as the operator of the vessel, had a duty to remedy or object to that clutter. Although the captain believed there was no negligence because of the walkways, Comeaux was certainly free to argue negligence, because the walkways did not perform adequately in a chaotic, emergency situation. Given the finding that at least some of Comeaux's injuries arose from the collision with the drums, any error the district court may have committed, by not expressly finding that the claim for injuries suffered from the collision with the drums was based on Elevating Boats' negligent maintenance of the deck, is harmless.

AFFIRMED.

---

[9] *Id.*

[10] *Id.* at 299 (emphasis added). *See also Kokesh v. Am. S.S. Co.*, 747 F.2d 1092, 1094 (6th Cir. 1984) (same).

11