**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-2160**

AUGUSTINE F. FORKWAR,

              Plaintiff - Appellant,

        v.

EMPIRE FIRE AND MARINE INSURANCE COMPANY,

              Defendant - Appellee.

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.   William Connelly, Magistrate Judge.
(8:09-cv-01543-WGC)

Argued:  May 16, 2012          Decided:  June 27, 2012

Before WILKINSON, GREGORY, and FLOYD, Circuit Judges.

Affirmed by unpublished opinion.   Judge Gregory wrote the
opinion, in which Judge Wilkinson and Judge Floyd joined.

**ARGUED:** Michael S. Blumenthal, BLUMENTHAL & ASSOCIATES, LLC,
Landover, Maryland, for Appellant.  Joseph Wolf, GOODELL DEVRIES
LEECH & DANN, LLP, Baltimore, Maryland, for Appellee. **ON BRIEF:**
Linda S. Woolf, GOODELL DEVRIES LEECH & DANN, LLP, Baltimore,
Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

This case involves a dispute over whether Appellee, an insurance company, is obligated under the terms of an insurance contract to pay Appellant for injuries he suffered in a car accident. The district court granted Appellee's motion for summary judgment, finding there was no such obligation. We affirm.

I.

Hameed Mahdi was a contractor for J&J Logistics, Inc., working under an independent contractor agreement. Mahdi leased his tractor to J&J, and J&J paid Mahdi for its exclusive use of the tractor. Pursuant to the contract, Mahdi called J&J's office each morning to see if J&J had a job for him to do. On November 25, 2004, Mahdi called J&J and was instructed to pick up a load at the Giant Food warehouse in Jessup, Maryland at midnight on November 26. Mahdi left his home late at night on the 26th and began to drive to Jessup. J&J's Interstate Commerce Commission ("I.C.C.") numbers and the name "J&J Logistics" were on his tractor. On the way to Jessup, Mahdi decided to stop to grab something to eat, but before he could exit the highway he was involved in an accident with Appellant Augustine Forkwar.

2

Mahdi had been issued a commercial auto insurance policy ("the Policy") by Appellee Empire Fire & Marine Insurance Company ("Empire"). After receiving notice of the accident, Empire conducted a routine investigation. It determined that the "business use" exception to the Policy applied and that Empire was therefore under no obligation to defend or indemnify Mahdi for the accident. The business use exception provides:

This Insurance does not apply to any of the following . . .

14. BUSINESS USE

> "Bodily injury" or "property damage" while a covered "auto" is used to carry people or property in any business or while a covered "auto" is used in the business of anyone to whom the "auto" is leased or rented.

J.A. 134, 138.

In October of 2006, Forkwar filed suit ("the underlying action") against both Mahdi and J&J seeking $500,000 in damages. The lawsuit alleged that Mahdi negligently caused injury to Forkwar in connection with the accident and that J&J was liable under the doctrine of respondeat superior. Based on its investigation and interpretation of the business use exception, Empire declined to defend Mahdi. At trial, Forkwar made no effort to affirmatively demonstrate that J&J was liable.[1] In his

---

[1] While Appellant never explains his strategy, it appears that he brought suit against J&J solely to have a verdict entered in J&J's favor on the respondeat superior claim, which he believes collaterally estops Empire from asserting the
(Continued)

3

opening statement, Forkwar's attorney told the jury that the judge "will take care of J&J, and I expect that they will be walking out of the courtroom." He said he would "attempt to show ironically that J&J didn't have anything to do with Mr. Mahdi." And when J&J made a mid-trial motion for judgment as a matter of law, Forkwar did not oppose the motion. Mahdi also failed to show up to the trial. The jury later found that Mahdi was negligent in the operation of his vehicle and awarded Forkwar $180,756.67.

After securing judgment against Mahdi in state court, Forkwar filed this action in the Circuit Court of Maryland for Prince George's County. Empire removed the case to the U.S. District Court for the District of Maryland, and the parties filed cross-motions for summary judgment. The district court denied Forkwar's motion for summary judgment, granted Empire's cross-motion for summary judgment, and denied Forkwar's counter motion for summary judgment. This timely appeal followed.

## II.

Forkwar makes two arguments on appeal. She first contends that the district court erroneously determined that Empire was

business use exception. For the reasons given below, we disagree.

4

not collaterally estopped by the judgment in the underlying action from arguing that the business use exception applies. Second, she argues on the merits that the business use exception does not bar coverage. We reject both of these arguments.

This Court reviews the grant or denial of summary judgment de novo. Overstreet v. Kentucky Life Ins. Co., 950 F.2d 931, 938 (4th Cir. 1991). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must construe the facts in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). In diversity cases, federal courts apply the substantive law of the state in which the action was brought. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78 (1938). Here, Maryland substantive law governs.

## A.

Appellant argues that the district court erred in failing to find the Appellee was collaterally estopped from claiming that the business use exception applies. Under Maryland law, a party seeking to invoke collateral estoppel must satisfy a four-part test:

1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?

2. Was there a final judgment on the merits?

3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?

4. Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

Colandrea v. Wilde Lake Cmty. Ass'n, 761 A.2d 899, 909 (Md. 2000) (citations omitted).

Appellant cannot meet her burden because the issue in the underlying action is not identical to the one presented by this case. Under Maryland law, the doctrine of respondeat superior permits "an employer to be held vicariously liable for the tortious conduct of its employee when that employee was acting within the scope of the employment relationship." Oaks v. Connors, 660 A.2d 423, 426 (Md. 1995). But because "a strict application of the doctrine . . . in the modern commercial world would result in great injustice," Maryland law holds

   that a master will not be held responsible for negligent operation of a servant's automobile, even though engaged at the time in furthering the master's business, unless the master expressly or impliedly consented to the use of the automobile, and had the right to control the servant in its operation, or else the use of the automobile was of such vital importance in furthering the master's business that his control over it might reasonably be inferred.

Gallagher's Estate v. Battle, 122 A.2d 93, 97 (Md. 1956) (emphasis omitted). As a result, there are four elements to

6

establish _respondeat superior_ in Maryland: (1) the existence of an employer-employee relationship[2]; (2) the tortious act must have occurred "within the scope of the employment relationship"; (3) the employer consented, explicitly or implicity, to the use of the automobile; and (4) the employer had the right to control the employee in the operation of the automobile or the use of the automobile was vitally important in furthering the master's business.

In contrast, the business use exception applies whenever "a covered 'auto' is used to carry people or property in any business or while a covered 'auto' is used in the business of anyone to whom the 'auto' is leased or rented." Plainly, the _respondeat superior_ doctrine and the business use exception are not identical issues. While _respondeat superior_ requires the existence of an employer-employee relationship, the business use exception has no such element. Thus, an individual like Forkwar who was acting "in the business of" J&J but who is an independent contractor rather than employee would be subject to the Policy's exclusion without falling under the doctrine of _respondeat superior_.

_____

[2] Maryland courts resolve this question by asking whether the employer had the right "to control and direct the employee in the performance of the work and in the manner in which the work is to be done." _B.P. Oil Corp. v. Mabe_, 370 A.2d 554 (Md. 1977).

While the Appellant never makes this argument in her brief, she could have relied on some of the Court of Special Appeals of Maryland's language in Empire Fire & Marine Ins. Co. v. Liberty Mutual Ins. Co, 699 A.2d 482 (Md. Ct. Sp. App. 1997). There, in construing Empire Fire's business use exception, the court said that it would "follow the course of other courts that have sought guidance from the analogous common law doctrine of respondeat superior." Id. at 495. This suggests that the application of the business use exception and respondeat superior are identical issues. It is true that the requirement in the business use exception that bodily injury occur while an auto "is used in the business of anyone" is quite similar to the second element for respondeat superior, that the accident occur "within the scope of the employment." However, that is not to say that all of the elements are identical. Respondeat superior requires that there be an employer-employee relationship, and Maryland -- like other states -- recognizes a distinction between an employee and an independent contractor. See, e.g., Greer Lines Co. v. Roberts, 139 A.2d 235 (Md. 1958) ("Whether the relation of the parties is that of master and servant, or employer and independent contractor, depends upon the facts . . . ."). In contrast, no language in the business use exception suggests there must be an employer-employee relationship; it requires only that the accident occur while the

8

auto is used in someone's business.  Thus at best Appellant has proven that one of the four elements of respondeat superior are met, but cannot establish the remaining three.  We therefore reject Appellant's collateral estoppel claim.

B.

Appellant goes on to argue that the district court erred in finding that the business use exception applies to the underlying action.  Maryland law construes insurance policies like any other contract.  E.g., N. River Ins. Co. v. Mayor & City Council of Balt., 680 A.2d 480 (Md. 1996).  "The first principle of construction of insurance policies in Maryland is to apply the terms of the contract" to determine the scope and limitations of coverage.  Mutual Fire, Marine & Inland Ins. v. Vollmer, 508 A.2d 130, 133 (Md. 1986).  The policy is reviewed as a whole, without putting emphasis on any particular provision.  Sullins v. Allstate Ins. Co., 667 A.2d 617 (Md. 1995).  Finally, when examining the policy's language, the "ordinarily and usually accepted" meaning should be applied, Aragona v. St. Paul Fire & Marine Ins. Co., 378 A.2d 1346 (Md. 1977), unless the parties intended to use the word "in a special or technical sense."  Cheney v. Bell Nat'l Life Ins. Co., 556

A.2d 1135, 1138 (Md. 1989).[3]  Unlike most states, Maryland does not apply the rule that insurance policies are construed against the insurer.  Empire Fire & Marine Ins. Co. v. Liberty Mutual Ins. Co., 699 A.2d 482, 494 (Md. Ct. Spec. App. 1997).

In Empire Fire v. Liberty Mutual, the Maryland Special Court of Appeals considered the same language at issue here under an analogous fact pattern.  There the plaintiff, James Perry, was the owner and operator of a tractor that was contracted out to a shipping company, O.S.T.; the tractor's I.C.C. license was in O.S.T.'s name.  Id. at 486.  O.S.T. also had a similar method of assigning work: Perry contacted O.S.T. daily to obtain his next assignment.  Id. at 487.  The timing of the accident, however, is different: Perry had completed his dispatch on January 16, dropped his tractor off at a service station that day, and returned four days later to pick it up.  Id.  On his way home from the service station, he was involved in an accident.  Id.  The Maryland court found that the business use exception did not apply, noting that Perry was driving to his home, not receiving any compensation from O.S.T., not

---

[3] The Maryland courts have determined that this contractual language is not ambiguous.  Liberty Mutual Ins. Co., 699 A.2d at 494 ("No ambiguity is present in Empire's business use exception clause.").

operating under a bill of lading, not under dispatch, and not hauling a load at the time of the accident.  Id. at 487-88.

Appellant suggests that Liberty Mutual is dispositive.  We disagree.  While most of the facts parallel the instant case, in Liberty Mutual the accident occurred several days after the completion of Perry's last dispatch, while he was driving home.  Here, in contrast, Mahdi was under dispatch -- a fact expressly noted in Liberty Mutual.  Id.

There is unfortunately very little additional case law on the applicability of the business use exception.  However, the decisions of other circuits provide guidance that Maryland law considers persuasive in interpreting its own law.  See Stanley v. Am. Motorists Ins. Co., 73 A.2d 1 (Md. 1950) ("[P]arties who adopt an insurance policy, which apparently has had nationwide use . . . adopt with it the uniform judicial construction that it has received in other states.").  Both the Seventh and Fifth Circuits, in considering similarly worded business use exceptions, have held that the purpose of the exclusions is to retract coverage for "occasion[s] when the truck is being used to further the commercial interest of the lessee."  Hartford Ins. Co. v. Occidental Fire & Cas. Co., 809 F.2d 235, 239 (7th Cir. 1990) (emphasis added); see also Mahaffey v. Gen. Sec. Ins. Co., 543 F.3d 738 (5th Cir. 2008); Empire Fire & Marine Ins. Co. v. Brantley Trucking, Inc., 220 F.3d 679 (5th Cir. 2000).  Under

11

this interpretation, the question is whether Mahdi's conduct at the time of the accident "furthered the commercial interest" of J&J.

In applying the furthering-the-interests test to this case, we find that Mahdi's conduct fell under the business use exception. The accident occurred while Mahdi was on his way to pick up a load for J&J; his driving to Jessup was a necessary step in completing his work. As the district court noted, Mahdi was not "pursuing leisurely engagement nor engaged in some frolic [or] detour." Rather, he had received instructions from J&J to go to Jessup to pick up a load and was in the process of completing that task. Although Mahdi had decided just before the accident to stop for a meal before making his way to the warehouse, he was operating his vehicle at the time of the accident solely for the purpose of furthering J&J's commercial interests. We therefore find that the business use exception applies and bars coverage.

III.

For the reasons given above, we affirm the district court.

AFFIRMED

12