700 So.2d 1311 (1997)
Gary J. LeBLANC
v.
Michael BAILEY, Mill Transportation Company, Inc. and Vanliner Insurance Company.
No. 97-CA-0388.
Court of Appeal of Louisiana, Fourth Circuit.
October 1, 1997.
Rehearing Denied October 31, 1997.
*1312 R. Henry Sarpy, Jr., Richard C. Badeaux, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for Appellant.
Arthur W. Landry, Plauche, Maselli & Landry, New Orleans, for Appellee.
Before SCHOTT, C.J., and CIACCIO and MURRAY, JJ.
CIACCIO, Judge.
This is an appeal of the granting of a summary judgment on an issue of insurance coverage. We affirm.

Facts and Procedural History
The underlying dispute arises out of a vehicular collision between a tractor owned by Michael Bailey and an automobile driven by plaintiff, Gary LeBlanc. At the time of the collision, Bailey's tractor was under lease agreement with Mill Transportation Company. Plaintiff brought this action for damages against Michael Bailey, Mill Transportation Company, and Vanliner Insurance Company, Mill's insurer which issued a policy of commercial automobile insurance to Mill for its leased vehicles. Plaintiff subsequently added as defendant Reliance National Indemnity Company, which issued an automobile policy to Bailey covering the tractor which was involved in this accident. Defendants Vanliner and Reliance disputed the applicability of insurance coverage in this case and filed cross-claims against each other.
Plaintiff's main demand was bifurcated from the insurance coverage issues between Reliance and Vanliner. Prior to trial, plaintiff settled his claims with defendants for $850,000.00, of which $475,000.00 was paid by Reliance and $375,000 00 was paid by Vanliner. The insurance companies reserved their rights to resolve the issue of coverage.
After the insurers settled their claims with plaintiff, both Vanliner and Reliance brought motions for summary judgment on the coverage issue. The trial court granted Vanliner's motion and denied Reliance's motion, finding that the Reliance policy provided primary coverage for the tractor involved in this accident. The trial court rendered judgment in favor of Vanliner and against Reliance for the amount of $375,000.00. Reliance now appeals.
The pertinent facts giving rise to this appeal are as follows: In 1993, Mill Transportation Company was a carrier authorizied by the Interstate Commerce Commission ("I.C.C.") to carry regulated commodities in interstate commerce. In January of 1993[1], *1313 Mill entered into a lease agreement with Michael Bailey, a resident of Violet, Louisiana, to lease his 1984 International tractorrig to perform transportation services under Mill's authority with Bailey as the driver. From January of 1993 until the end of Bailey's contract with Mill, Bailey drove his tractor exclusively for the benefit of Mill and in accordance with the terms and conditions set forth in the lease agreement. In compliance with applicable I.C.C. regulations, the lease provided that the lessee, Mill, had exclusive possession, control, and responsibility over the tractor-rig at all times during the lease period.
In addition, I.C.C. regulations required authorized carriers to specify in the lease agreement the carrier's legal obligation to maintain insurance coverage, including bobtail coverage.[2] Accordingly, the lease contained the following provision:
Lessee [Mill] supplies insurance coverage for liability, personal injury, property damage and bobtail coverage at times other than when en route to and from point of pick up, delivery, or engaged in actual bona fide movement from origin to destination.
Thus, pursuant to the I.C.C. regulations and the provisions of the lease, Mill was required to provide insurance for Bailey's tractor while it was making pickups or deliveries and also while the tractor was "bobtailing," or operating without a delivery load or a trailer.
In accordance with the terms of the lease, Mill secured a policy of commercial automobile insurance from Vanliner which provided liability coverage for its leased vehicles, including the tractor owned by Michael Bailey. The Vanliner policy was issued in the name of Mill Transportation and provided limits of $1,000,000.00.
In addition to the Vanliner policy, Mill also secured a business auto policy from Reliance Insurance Company to comply with the "bobtail coverage" provision in the lease agreement. This policy was issued to Michael Bailey as the named insured with a policy limit of $1,000,000.00, and it described as covered "autos" those which were under long term lease to Mill Transportation Company. However, this policy contained an endorsement for non-trucking use which provided the following exclusion:
This insurance does not apply to:
a. A covered "auto" while used to carry property in any business.
b. A covered "auto" while used in the business of anyone to whom the "auto" is rented.
The Reliance policy further provided that with regard to other insurance, the Reliance policy was primary as to covered vehicles owned by the insured, and the coverage was excess as to non-owned vehicles.
In support of its motion for summary judgment, Reliance argued that its policy excluded coverage in this case as the covered vehicle had been leased to Mill, and Bailey was "in the business" of Mill at the time the accident occurred. Conversely, Vanliner argued that Bailey had completed his work with Mill for the day, and at the time of the accident, Bailey was bobtailing and was covered by the Reliance policy. Following a hearing, the trial court determined that at the time of the accident, Bailey was no longer "in the business" of Mill, and the Reliance policy provided primary coverage for this accident.

Discussion
There is no dispute in the present case that both the Vanliner and Reliance policies provided coverage for Bailey's tractor. The dispute centers around whether the Reliance policy provided coverage at the time the accident occurred, and if so, which policy is primary. To determine the applicability of insurance coverage in this case, we must determine whether the trial court erred in finding that the exclusion in the Reliance policy did not apply and that the Reliance policy provided primary coverage for this *1314 accident. Specifically, the issue presented is whether, as a matter of law, Bailey was using his tractor-rig "in the business" of Mill when he collided with the LeBlanc vehicle while en route to his home in Violet, Louisiana.
The specific issue of whether an independent trucker who leases his vehicle to a transportation company is "in the business" of the lessee when he drives to his home following a day of deliveries has not been addressed by Louisiana courts. This is not an employer/employee relationship where the court would generally apply a course and scope of employment analysis. Further, although Reliance relies on several cases from other jurisdictions which considered the general issue presented in the case before us, these cases each turn on their own set of facts and do not establish a bright line rule of when an independent trucker is considered to be in the business of the lessee of the vehicle. We must therefore look to the specific facts presented in the record of this case to determine which of the two policies provides primary coverage.
At the hearing of this matter, the deposition of Michael Bailey was introduced into the record. Bailey testified in his deposition that he entered into an oral lease agreement with Mill for the use of his tractor-rig in January of 1993. As a general rule, Bailey would telephone a dispatcher at Mill's office each morning from his home at approximately 8:00 a.m. The dispatcher would inform him of whether Mill had work for him, and Bailey would either go to the Mill office to pick up paperwork or he would proceed directly to the job site to pick up a chassis and a load. Bailey stated that at the end of the day, he drove his tractor home, and he did not store it at the Mill yard for safety reasons.
On the date of the accident, Bailey testified he telephoned the dispatcher and then reported to the Mill facility to pick up paperwork. He then made six deliveries at different locations in the New Orleans area. The final delivery he made was at Ceres Gulf on Jordan Road at approximately 5:00 p.m., where he delivered a container and the chassis and turned in the appropriate paperwork. He then began to drive to his home in Violet. Bailey was involved in the accident with the LeBlanc vehicle at approximately 5:30 p.m. while en route to his home.
Bailey testified that he was paid by Mill based on the gross revenue of the delivery or the amount of mileage for each delivery, whichever was greater. He testified he was not paid for the mileage from his home to the Mill yard or to his first delivery point, nor was he paid for mileage from his final delivery point to his home. Bailey further testified that once he made the decision to turn for home, he was no longer subject to Mill's control or direction, and did not return for any further deliveries. He stated that he was not under pre-dispatch for any deliveries for the following day.
Reliance argues that because Bailey testified that he was sometimes dispatched by Mill directly from his home, he in fact worked out of his home, and therefore the drive from his last delivery point to his home would be considered to be "in the business" of Mill. Reliance further contends that the only reason Bailey was at the accident site was in furtherance of Mill's business. However, in his deposition, Bailey specifically testified that he did not consider himself as working from his home.
Under the circumstances presented here, we find no error of the trial court in its determination that at the time of the accident, Bailey was no longer in the business of Mill after he made his last delivery and started for home. At this point, Bailey was free to go where he pleased, and he was not subject to Mill's control or paid for his time or mileage. Bailey was not under dispatch or standby for further deliveries, and his drive home was more of a personal nature rather than a work-related function.
As Bailey's tractor was not pulling a trailer at the time of the accident, he was considered to be "bobtailing," and the Reliance policy specifically provided this type of coverage. We recognize that bobtail insurance applies only in very limited circumstances. However, under the facts of the present case, we find that to construe the Reliance policy as not affording coverage would render the non-trucking use endorsement meaningless and *1315 would defeat Mill's very purpose in securing this type of coverage. Although there were times when Bailey could "bobtail" while "in the business" of Mill (i.e., when he was between delivery points), and therefore he would be subject to the exclusion contained in the Reliance policy, this was not one of those instances. This was exactly the type of instance for which the non-trucking use endorsement provides coverage. Once Bailey made his final delivery and began to drive home, he was no longer furthering Mill's business, and the exclusion in the Reliance policy is therefore inapplicable.
Subject to the applicable exclusions, the Reliance policy provided primary coverage in the amount of $1,000,000.00 for the tractor owned by Bailey. The Vanliner policy specifically provided primary insurance where a covered auto is used in the business of Mill, the insured. Such is not the case here, and we reject Reliance's argument that both policies provided primary coverage. As the exclusion in the Reliance policy is not applicable in this case, we find that, as a matter of law, Vanliner was entitled to summary judgment finding that the Reliance policy provided primary coverage for this accident.
Accordingly, for the reasons assigned, the judgment of the trial court is affirmed. Reliance is to bear all costs of this appeal.
AFFIRMED.
SCHOTT, C.J., dissents with reasons.
SCHOTT, Chief Judge, dissenting.
As the majority opinion states, the issue is whether, as a matter of law, Bailey was using his tractor in Mill's business when he had the accident while on his way home after making his last delivery for Mill. In resolving this issue in the negative, the majority cites Bailey's testimony that he drove the tractor home rather than leasing it at Mill's yard for safety reasons, that he didn't consider himself to be working after he made the last delivery, and that he was not paid mileage for the trip from the last delivery to his home.
All of this overlooks the fact that, pursuant to the I.C.C. regulations and the lease, Mill had exclusive possession, control, and responsibility over the rig at all times during the lease period as recognized in the majority opinion. This means that it was Mill's decision, not Bailey's to store the rig at Bailey's home. Had Mill required Bailey to return the rig to its yard and the accident had happened between the point of the last delivery and the yard he would surely have been engaged in Mill's business at the time. Whether he was paid mileage or not he was proceeding to the place where Mill decided the tractor was to be stored in this case even though that place was Bailey's home. For all practical purposes this tractor under Mill's exclusive control was Mill's tractor. Bailey did not have the option of leaving it at the point of last delivery. He was obliged by Mill to take it to some place designated by Mill for the night. I respectfully submit that logic prevents the conclusion that he was not engaged in Mill's business when he was involved in this accident.
I disagree with the majority that the interpretation would defeat the purpose of the Reliance coverage. Having decided that Bailey would retain possession of the vehicle after hours Mill had to protect himself against liability in the event that Bailey used the tractor for personal reasons. Mill was vulnerable to the cost of defense any time there might be an accident no matter what use the tractor was put to. In the absence of a policy which protected Mill regardless of the nature of the use it had to secure the type of coverage Reliance offered.
I would reverse the judgment of the trial court and put the entire loss on Vanliner.
NOTES
[1] Although the lease was not executed in writing until October 4, 1993, the parties agree that the terms of the written lease were effective from the time Bailey first started working for Mill in January of 1993.
[2] "Bobtailing" is the term used in the trucking industry to describe situations where a tractor is being operated without an attached trailer or chassis.