# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 97-1402

_____

National Continental Insurance
Company,

        Appellant,

v.

Empire Fire and Marine Insurance
Company,

        Appellee.

\* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
District of Nebraska.

_____

Submitted:  April 15, 1998
Filed: October 6, 1998

_____

Before WOLLMAN, LOKEN, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

National Continental Insurance Company (National) appeals from the district court's[1] entry of declaratory judgment in favor of Empire Fire & Marine Insurance Company (Empire) in this diversity action.  National argues that the district court misconstrued Oregon law and therefore erred in ruling that Empire is not responsible

_____

[1]The Honorable William G. Cambridge, Chief Judge, United States District Court for the District of Nebraska.

for paying settlement damages and litigation costs arising out of an accident involving a semi-tractor owned by A. B. Arvidson and leased by NPE, Inc. (NPE).  We affirm.

I.

The district court decided this diversity action on stipulated facts.  Arvidson owns a Kenworth semi-tractor which, at all times relevant to this dispute, was under permanent lease to NPE.[2]  The truck was insured under two different policies.  First, NPE owned an insurance policy issued by National, which provided $1,000,000 in liability coverage for accidents resulting from "the ownership, maintenance, or use" of the truck by NPE in the course of NPE's "business as a trucker."  (J.A. at 208).  Second, Arvidson owned an insurance policy issued by Empire, which provided $500,000 in liability coverage for accidents "resulting from the ownership, maintenance or use" of the truck.  (Id. at 207.)  The Empire policy expressly *excluded* damages arising "while a covered auto is used to carry property in any business or while a covered auto is *used in the business of* [NPE]."  (Id. (emphasis added).)[3]

On January 3, 1992, Arvidson set out in his truck from his home in Springfield, Oregon, heading for Roberts Motors in Eugene, Oregon.  The truck was between

---

[2]For a discussion of permanent leases in the trucking industry, see Wales Transp., Inc. v. ICC, 728 F.2d 774, 776-77 (5th Cir. 1984).

[3]Arvidson was contractually required to carry such "nontrucking use" liability insurance.  Pursuant to the service contract between Arvidson and NPE, Arvidson was required to indemnify NPE and assume full responsibility for all loss or damage arising from the "operation, maintenance, or use" of the truck that was "not related to the performance of this [service] Contract."  (J.A. at 46.)  To assure Arvidson's ability to honor this obligation, the service contract required Arvidson to carry $500,000 in liability insurance which "affords protection when the equipment is not being operated . . . under [NPE's] dispatch instructions or in carrying out of the business of [NPE]."  (Id.)

2

dispatch orders, and Arvidson had scheduled it for a front end alignment. On the way to Roberts Motors, Arvidson was involved in a traffic accident involving two other vehicles. Two injured occupants of one of the other vehicles sued Arvidson. Empire and National each denied responsibility for the payment of damages arising from the accident. However, the two insurers agreed to split the costs of the litigation and any settlement award until the dispute between them could be resolved. The two insurers eventually reached a settlement with the injured motorists in the amount of $271,455.94. Subsequently, National filed this action in the district court for a declaratory judgment to the effect that the Empire policy covered the accident, and that Empire was responsible for paying all settlement damages and litigation costs up to $500,000. Empire responded with a counterclaim for declaratory relief stating that the Empire policy did not cover the accident at issue and that National was exclusively responsible for all damages and costs arising from it. The district court held for Empire, and this appeal followed.

## II.

We review the district court's interpretation of an insurance contract de novo, see Koch Eng'g Co. v. Gibraltar Cas. Co., 78 F.3d 1291, 1294 (8th Cir. 1996), applying the same standards as the district court. The district court applied Nebraska choice of law principles[4] and determined that Oregon law governs all three contracts (the service contract, the National policy, and the Empire policy). The district court found that, under Oregon law, there was no clear answer to the legal issues presented. When faced with a similar situation in Acceptance Insurance Company v. Canter, 927 F.2d 1026, 1027-28 (8th Cir. 1991) (applying Minnesota law to interpret the language "in the business of" in a similar insurance policy), our court looked to state respondeat superior principles for guidance. Accord Liberty Mut. Ins. Co. v. Connecticut Indem. Co., 55

---

[4]In diversity cases, the forum state's choice of law rules govern. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).

F.3d 1333, 1335-37 (7th Cir. 1995) (applying Indiana law to interpret the language "in the business of" in a similar insurance policy). Following our example, the district court in this case looked to Oregon respondeat superior principles for guidance as to how the Oregon Supreme Court would treat this issue of first impression. Both parties agree with the district court's treatment of the case up to this point.

Under Oregon principles of respondeat superior, an employee acts within the scope of his employment only if three requirements are satisfied. First, an employee must act "substantially within the time and space limits authorized by the employment." Chesterman v. Barmon, 753 P.2d 404, 406 (Or. 1988) (en banc). Second, the employee must be "motivated, at least partially, by a purpose to serve the employer." Id. Third, the act must be "of a kind which the employee was hired to perform." Id. Looking to the three Chesterman requirements for guidance, the district court held that Arvidson was operating the truck in the business of NPE at the time of the accident, writing:

> The accident occurred while the Kenworth was the subject of the Service Agreement, a lease which gave NPE, Inc. "exclusive possession, control, and use" of the Kenworth for the duration of the lease, and by which NPE, Inc. assumed "complete responsibility for the operation" of the Kenworth for the duration of the lease. Furthermore, the Court finds that Mr. Arvidson's trip to Eugene was motivated, at least partially, by a purpose to serve NPE, Inc.'s interest in keeping the Kenworth in safe and efficient operating condition. Finally, Mr. Arvidson's act of taking the Kenworth for servicing was an act that the Service Agreement required Mr. Arvidson to perform.

(2d Adden. to Appellant's Br. at 11 (internal citations omitted).)

Based on this analysis, the district court held that the Empire policy did not cover the accident and that National is fully and solely liable for all costs related to the

settlement and litigation. National argues on appeal that the district court misapplied the three-part Chesterman test.

## III.

We must determine whether the trip to Eugene for a front end alignment constituted "the business of" NPE. If it did, the accident fell within the exclusion to the Empire policy (id. at 207), and National's coverage is exclusive.

While Cantor supports the district court's decision to look to Oregon respondeat superior principles for guidance, the analogy to respondeat superior is a loose one at best. Because Arvidson was not an employee of NPE but rather a lessor and independent contractor, it would be inappropriate for us to phrase the question in terms of whether Arvidson was acting within the scope of his *employment*. See Liberty Mut. Ins. Co., 55 F.3d at 1335. The proper question, we believe, is whether Arvidson was acting within the scope of *the service contract* with NPE—in other words, whether he was fulfilling his bargained-for contractual duties at the time of the accident.[5] To the extent that he was executing his contractual duties, he was clearly acting "in the business of" NPE and thus outside the scope of Empire's coverage. Cf. Hartford Ins. Co. v. Occidental Fire & Cas. Co., 908 F.2d 235, 239 (7th Cir. 1990) ("in the business of" . . . "clearly refers to occasions when the truck is being used to further the commercial interests of the lessee."). This reading finds support in the service contract, which limits Arvidson's duty to insure to situations where Arvidson's use of the truck is "not related to the performance of this [service] Contract." (See J.A. at 206.)

---

[5]In terms of the Chesterman criteria, this can be stated as follows: Was Arvidson acting within the space and time limits of the service contract, was he motivated by an intent to fulfill his contractual obligations, and was he performing an act of the type contemplated by the service contract. See Chesterman, 753 P.2d at 406.

We therefore look to the terms of the service contract to determine whether Arvidson was fulfilling a contractual duty when he drove the truck to Eugene for a front end alignment. Pursuant to the service contract, Arvidson was responsible for keeping the truck in compliance with all laws and regulations (id. at 33-34), for making sure that it passed periodic inspections (id. at 34-35), and for paying all maintenance costs (id. at 41). Failure to get the truck initially approved prevented NPE's contractual duties from arising (id. at 33-35), and failure to keep the truck in compliance with federal standards would be considered a breach (id. at 57).

In particular, the service contract required Arvidson to assure that his truck complied with the safety requirements of 49 C.F.R. § 393. Id. at 34. Among other things, section 393 provides that "[a]ll axles must be in proper alignment." 49 C.F.R. § 393.207(a). Therefore, it is clear that Arvidson was executing his contractual duty to keep the truck in conformity with federal regulations when he took the truck to Eugene for a front end alignment. Accordingly, Arvidson was acting "in the business of" NPE and the Empire exclusion applies.[6]

National argues that because Arvidson owned the truck, he was serving his own interests rather than those of NPE when he sought the alignment. While Arvidson clearly had an interest in maintaining his vehicle, we agree with the Seventh Circuit's comment that "[t]he possibility that [the owner's] interests coincided with those of [the lessee] does not diminish the benefits [the lessee] received from [the owner's] actions[.]" Hartford, 908 F.2d at 239; see also Freed v. Travelers, 300 F.2d 395, 398 (7th Cir. 1962) ("[T]he procurement of repairs incident to lessor's duty to hold the

---

[6]In other words, the fact that Arvidson was satisfying a contractual duty when the accident occurred is dispositive of all three of the Chesterman factors: It places Arvidson within the time and space limits of the contractual relationship, it shows that he was acting to advance the interests of NPE, and it clarifies that he was undertaking a duty which was expressly required by the service contract. See Chesterman, 753 P.2d at 406.

tractor 'ready at all times for services of the lessee' is to be regarded as an activity exclusively in the business of the lessee and not a personal use of the tractor[.]").

In short, because Arvidson was executing a contractual duty at the time of the accident, we hold that the district court correctly concluded that Arvidson was carrying out the business of NPE when he drove the truck to Eugene for a front end alignment and that the accident which occurred en route to Eugene was accordingly excluded from coverage under the Empire policy. Because the Empire exclusion applies, National is solely responsible for covering the loss.

## IV.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

7