IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 26, 2008

Charles R. Fulbruge III
Clerk

No. 07-31132

———————

JOHN MAHAFFEY,

Plaintiff

v.

GENERAL SECURITY INSURANCE CO.; ET AL

Defendants

_____

REDLAND INSURANCE CO.,

Third-Party Defendant–Appellant,

v.

FIRST COAST INTERMODAL SERVICE INC.; GENERAL SECURITY
INSURANCE CO.; ARTHUR WYNN,

Defendants–Third-Party Plaintiffs–Appellees.

———————

Appeal from the United States District Court
for the Middle District of Louisiana

———————

Before REAVLEY, STEWART, and OWEN, Circuit Judges.

PER CURIAM:

Appellant Redland Insurance Company (Redland) appeals a grant of
summary judgment in favor of appellee General Security Insurance Company
(GSI). The district court ruled that Redland provided primary insurance

coverage for a commercial truck accident, holding a "nontrucking use" endorsement in the Redland policy did not exclude coverage because the driver was not "in the business of" the trucking-company lessee at the time of the accident. Because we hold that the driver was in the business of the lessee as a matter of law, we reverse and render judgment for Redland.

I

In 1999, Farr Auto Sales (Farr) leased a truck and provided a driver, Arthur Wynn, to First Coast Intermodal Service (First Coast) to haul a load from Bowling Green, Kentucky, to New Orleans, Louisiana. Wynn dropped the load off in New Orleans at approximately 4 p.m. and called the First Coast dispatcher. The dispatcher told Wynn to "take the rest of the night off and call [First Coast dispatch] in the morning to see if they had a load." After speaking with the First Coast dispatcher, Wynn drove the truck without its trailer ("bobtailed"[1]) to a truck stop where he ate dinner, watched television, took a shower, and played some slot machines. In total, Wynn stayed at the truck stop for between six and seven hours.

Although Wynn usually slept in the cab of his truck, a leak left the mattress in the main cabin wet, and Wynn decided to go to a motel for the night. On his way to the motel, Wynn was involved in an automobile accident with John Mahaffey. Mahaffey brought suit in Louisiana state court against Wynn, First Coast, and First Coast's insurance provider, GSI (collectively, Defendants). First Coast and GSI removed the case to the Middle District of Louisiana.

Following removal, Defendants filed a third-party complaint against Redland Insurance Company (Redland), alleging that because Wynn was bobtailing at the time of the accident, the Redland insurance policy provided primary coverage.

---

[1] See SAUL SORKIN, GOODS IN TRANSIT § 45.01 (2008) (defining "bobtailing" as "[t]he operation of a tractor without an attached trailer").

Redland provided an insurance policy on the truck that included liability, personal-injury, uninsured-motorist, and collision coverage, as well as coverage for other specified causes of loss. The coverage was subject to exclusions and endorsements, including a nontrucking use endorsement. Although insurance with a nontrucking use endorsement is often referred to as "bobtail insurance," the coverage is not described in terms of bobtailing. Rather, the endorsement provides that "the insurance does not apply to . . . [a] covered 'auto' while used to carry property in any business . . . [or] a covered 'auto' while used in the business of anyone to whom the 'auto' is rented."

The terms of the lease agreement between Farr and First Coast required Farr to carry nontrucking use liability insurance and required First Coast to maintain its own public liability, property, and cargo insurance. Pursuant to a "deduction notice" Farr signed, First Coast paid the nontrucking liability insurance premiums and deducted the premiums from amounts paid to Farr under the lease agreement. At the time of the execution of the lease agreement between Farr and First Coast, the annual premium for the nontrucking use policy was $360.00 per year, payable in advance in $30.00 monthly installments. Although the deduction notice provided a fixed amount to be deducted for nontrucking use liability insurance, the lease agreement also gave First Coast the right to change the amount to be deducted for nontrucking use liability insurance to the amount established by the insurance company.

Although conceding that the GSI policy provided coverage to Mahaffey for his claim, Defendants filed a motion for partial summary judgment asking the court to hold that the Redland policy provides primary coverage and the GSI policy provides excess coverage. The magistrate judge recommended granting the motion, concluding that because Wynn had no "pending, definite assignment" and "no requirement from First Coast that he stay in New Orleans" the night of the accident, Wynn was not in the business of First Coast at the

time of the accident and that, therefore, the Redland policy provided primary coverage. The district court adopted the magistrate's recommendation.

Redland first appealed the district court's grant of partial summary judgment in March 2002. This court held the appeal was premature. Redland then filed a motion to make the judgment final pursuant to Federal Rule of Civil Procedure 54(b). The district court granted the motion. Redland again appeals the district court's grant of summary judgment, arguing that Wynn was in the business of First Coast at the time of the accident.

II

We review a district court's grant of summary judgment de novo.[2] Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[3] In determining whether there is a genuine issue of material fact, we view facts and inferences in the light most favorable to the nonmoving party.[4]

GSI contends that certain deposition testimony of the corporate representative of First Coast and of Farr was inadmissible lay opinion testimony, lacks foundation, and has no basis other than hearsay. It is not clear whether the magistrate judge or the district court relied on this testimony in any way. Because the case does not turn on this testimony, we do not consider it or its admissibility.

---

[2] Essinger v. Liberty Mut. Fire Ins. Co., 529 F.3d 264, 269 (5th Cir. 2008).

[3] FED. R. CIV. P. 56(c).

[4] Essinger, 529 F.3d at 269.

III

The parties agree Louisiana law applies. Under Louisiana law, "[i]nterpretation of an insurance contract generally involves a question of law."[5] The words of the insurance contract "must be given their generally prevailing meaning."[6] If the language in the insurance policy is clear and unambiguous, the insurance contract must be enforced as it is written.[7]

We have held that the phrase "in the business of" in a nontrucking use endorsement is unambiguous.[8] "That 'contractual language may, on occasion, pose difficult factual applications . . .' and that the parties disagree as to coverage, does not create ambiguity."[9] Although the application of the endorsement to these facts may pose difficult questions, the difficulty of the questions does not create an ambiguity. Because "in the business of" as used in the nontrucking use endorsement is unambiguous, the issue is properly resolved as a matter of law on a motion for summary judgment.

The Louisiana Supreme Court has not yet considered when an independent trucker is acting in the business of a lessee. In the absence of a decision interpreting a particular insurance clause, we must ascertain how the Louisiana Supreme Court would rule if faced with interpreting the insurance

---

[5] In re Katrina Canal Breaches Litig., 495 F.3d 191, 206 (5th Cir. 2007) (citing Bonin v. Westport Ins. Corp., 05-0886 (La. 5/17/06); 930 So. 2d 906, 910).

[6] Id. at 207 (quoting LA. CIV. CODE ANN. art. 2047 (1987)).

[7] Id. (citing Cadwallader v. Allstate Ins. Co., 02-1637 (La. 6/27/03); 848 So. 2d 577, 580).

[8] Empire Fire & Marine Ins. Co. v. Brantley Trucking, Inc., 220 F.3d 679, 681 (5th Cir. 2000); accord Liberty Mut. Ins. Co. v. Conn. Indem. Co., 55 F.3d 1333, 1335 (7th Cir. 1995) (holding the exclusion "while used in the business of anyone to whom [it] is rented" to be unambiguous).

[9] Brantley Trucking, 220 F.3d at 681 (quoting Hartford Ins. Co. v. Occidental Fire & Cas. Co., 908 F.2d 235, 239 (7th Cir. 1990)).

provision[10] by looking to guidance from the constitution, codes, and statutes of the state of Louisiana;[11] decisions from Louisiana intermediate appellate courts and federal courts applying Louisiana law;[12] and decisions from other jurisdictions.[13]

No constitutional provision, code, or statute defines when a trucker is acting in the business of a lessee. The only Louisiana Court of Appeal case considering whether a driver is in the business of a lessee is LeBlanc v. Bailey.[14] In LeBlanc, a trucker was involved in an accident while en route to his home after finishing deliveries that day.[15] The lessee carried commercial automobile insurance and the driver carried a bobtail policy that contained an endorsement for nontrucking use, which provided that the bobtail insurance did not apply to "a covered 'auto' while used in the business of anyone to whom the 'auto' is rented."[16] The language of this endorsement for nontrucking use is identical to the language in the endorsement for nontrucking use in the Redland policy.

The Louisiana Court of Appeal affirmed the trial court's holding that the bobtail insurance was primary for the accident as a matter of law.[17] Noting that there was not a bright-line rule to determine whether an independent trucker is acting in the business of the lessee, the court emphasized that the driver was

---

[10] See Cochran v. B.J. Servs. Co. U.S.A., 302 F.3d 499, 502 (5th Cir. 2002).

[11] In re Katrina Canal Breaches Litig., 495 F.3d at 206.

[12] Cochran, 302 F.3d at 502.

[13] See Stanley v. Trinchard, 500 F.3d 411, 423-24 (5th Cir. 2007) (noting that in making an "Erie-guess," this court may consult "decisions from other jurisdictions").

[14] 97-0388 (La. Ct. App. 4 Cir. 10/1/97); 700 So. 2d 1311.

[15] Id. at 1314.

[16] Id. at 1313.

[17] Id. at 1314.

"free to go where he pleased [and] . . . was not subject to [the lessee's] control or paid for his time or mileage. [The driver] was not under dispatch or standby for further deliveries, and his drive home was more of a personal nature rather than a work-related function."[18]

Although the LeBlanc court did not specifically enumerate factors to be considered in determining whether a driver is in the business of another for the purpose of Louisiana insurance law, the decision indicated that relevant considerations include: whether the driver was free to go where he pleased; whether the driver was paid for time or mileage; whether the driver was under dispatch or standby for further deliveries; and whether the activity was more of a personal or work-related function.[19] There is, however, no indication from LeBlanc that these considerations are exclusive. The LeBlanc court also expressed concern that construing the bobtail policy to exclude coverage when the driver was driving home would "render the non-trucking use endorsement meaningless and would defeat [the insured's] very purpose in securing this type of coverage."[20]

Applying the reasoning of LeBlanc leads us to conclude that Wynn was acting in the business of First Coast. One of the important considerations in LeBlanc was whether the driver was "under dispatch or standby for further deliveries," or whether "his drive home was more of a personal nature rather than a work-related one."[21] Unlike the driver in LeBlanc, who was heading home after completing his deliveries and was not under predispatch for

---

[18] Id.

[19] See id.

[20] Id. at 1314-15.

[21] Id. at 1314 (emphasis added).

deliveries the following day,[22] Wynn was not heading home, and he was on standby for further deliveries because the First Coast dispatcher told him to "take the rest of the night off and call [First Coast dispatch] in the morning to see if they had a load." The First Coast dispatch had not yet released Wynn to return to his home in Missouri. First Coast's corporate representative testified that First Coast drivers had the option to reject offered loads, but Wynn sought an additional load from First Coast and complied with its request that he take the night off and call the next day about a load. Although Wynn was "free to go where he pleased" in the interim, in the sense that First Coast did not direct his activities that evening, Wynn would have had to stay within close proximity to New Orleans to be available to pick up a load. Wynn was not paid for his time or mileage while waiting for the next load, but he would have lost the opportunity to earn return-trip income if he left before ascertaining whether a load would be available, and First Coast would have lost an available driver. Wynn was furthering First Coast's commercial interests to have a driver on standby and available to take a load the next day, regardless of whether one actually became available. Finally, unlike driving home after completing deliveries, driving to a motel far from home in order to sleep to be adequately rested, when asked to remain in the area to see if a load becomes available, is a work-related function for a commercial driver because commercial drivers are required to have a certain number of rest hours between hauls.[23] Accordingly, Wynn was acting in the business of First Coast as a matter of law.

Our conclusion, based on the reasoning of LeBlanc, that Wynn was in the business of First Coast is consistent with the "commercial interest" test we

---

[22] Id.

[23] See 49 C.F.R. § 395.1 (2007) (providing time limits on driving hours and minimum rest times).

articulated in Empire Fire & Marine Insurance Co. v. Brantley Trucking, Inc.[24] In Brantley Trucking, this court considered language nearly identical to the nontrucking use policy in this case.[25] Applying Texas law, we held that the language in the endorsement for nontrucking use was unambiguous and "clearly refers to occasions when the truck is being used to further the commercial interests of the lessee."[26]

In Brantley Trucking, the driver of a leased truck, while waiting for cargo to load at the lessee's terminal yard, bobtailed to have the truck's oil changed, pick up auto parts, and have other maintenance performed at a service station.[27] On his way back to the lessee's terminal, the driver was involved in an accident.[28] We held that the driver was acting in the lessee's business as a matter of law because the driver was furthering the commercial interests of the lessee when he was "only biding his time while the cargo loaded" and was not "out pursuing leisurely engagement."[29]

Decisions in other jurisdictions determining whether a driver was acting in the business of a lessee also support our holding that Wynn was acting in the business of First Coast. Unlike driving home, which is generally found to be not in the business of a lessee,[30] Wynn was driving to a motel to sleep with a

---

[24] 220 F.3d 679 (5th Cir. 2000).

[25] See id. at 680, 682 n.3 (excluding policy coverage "while a covered 'auto' is used in the business of anyone to whom the 'auto' is leased or rented").

[26] Id. at 682.

[27] Id. at 680.

[28] Id.

[29] Id. at 682.

[30] See, e.g., Acceptance Ins. Co. v. Canter, 927 F.2d 1026, 1028 (8th Cir. 1991) (holding that a driver was not in the business of a lessee where the driver was driving to his home after being told there was no cargo available for hauling and to call back a few days later).

reasonable expectation that a load would be available the following day. Courts have recognized that a driver can be acting in the business of another when driving to or from a place to sleep or rest.[31]

Finally, GSI argues that applying the nontrucking use endorsement to exclude coverage in this case would render the nontrucking use policy "meaningless." This argument is unavailing. LeBlanc exemplifies circumstances under which the nontrucking use endorsement does not preclude coverage—when a driver is driving home after dropping a load off without further instructions.[32] We could posit other circumstances in which a vehicle is not being "used in the business of anyone to whom the 'auto' is rented," but we decline to offer what would be advisory rulings. Our holding reflects the Redland policy's purposely tailored coverage and does not render the nontrucking use policy meaningless.

*　　*　　*

Because Wynn was in the business of First Coast at the time of the accident as a matter of law, we REVERSE the trial court's grant of summary judgment and RENDER judgment for Redland.

---

[31] See Liberty Mut. Ins. Co. v. Conn. Indem. Co., 55 F.3d 1333, 1334, 1337 n.5 (7th Cir. 1995) (holding that a driver was in the business of a lessee when returning to pick up a trailer he left at a truck stop in order to bobtail to spend a night at home and noting the fact that the driver went home instead of a hotel was not determinative as the driver "had to sleep somewhere"); Auto-Owners Ins. Co. v. Redland Ins. Co., 522 F. Supp. 2d 891, 898 (W.D. Mich. 2007) (holding that a trucker going to find a place to sleep the night before picking up an assigned load was in the business of a lessee because he was "on business far from both his home and the home base of his employer," the lessee "expected him to get rest so that he would be eligible to pick up a load the next morning," and the "essential purpose of [the driver's] actions was to benefit [the lessee] by getting the required hours of sleep and ensuring his ability to make a pick up the following morning").

[32] See LeBlanc v. Bailey, 97-0388 (La. Ct. App. 4 Cir. 10/1/97); 700 So. 2d 1311.