**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 24, 2009

Charles R. Fulbruge III
Clerk

No. 08-31069

PETER MANTHOS

Plaintiff - Appellant

v.

JEFFERSON PARISH

Defendant - Appellee

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC No: 2:07-cv-1302

Before GARWOOD, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Peter Manthos brought an employment discrimination action against his former employer, Jefferson Parish. The district court granted summary judgment to Jefferson Parish on one of Manthos's claims and judgment as a matter of law on another. Manthos appeals. We AFFIRM.

FACTS AND PROCEDURAL HISTORY

Manthos was employed as a library associate from June 2002 until he was terminated in May 2006. At the time Manthos was hired, it was known that he

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

suffered from a cardiac condition. Approximately fifteen months into his employment, Manthos was diagnosed with various orthopedic problems in his back and knees. The library initially provided an informal accommodation to Manthos by transferring him to a department where bending and squatting were minimal.

According to Jefferson Parish's personnel policy, an employee may be granted a maximum of ninety days of leave without pay. After a number of absences, Manthos was informed by letter that his remaining without-pay leave would expire on March 31, 2006. In that same letter, Manthos was directed to attend a meeting on March 20 in which his future employment would be discussed. He was asked to bring with him certification from his physicians addressing his ability to perform essential job functions.

At the meeting, Manthos met with two individuals from the Jefferson Parish Human Resources Department. Manthos provided letters from two doctors. The letters defined permanent restrictions on Manthos's ability to prepare and unpack shipments, shelve library materials, load the book drop, stand for periods over two hours, and repeatedly lift and discharge library materials, as well as temporary restrictions on Manthos's ability to bend, stoop, twist, turn, push carts, and move materials. Manthos maintains that at the meeting, he was told that there were no light-duty desk jobs he could perform within the parish, even in non-library positions.

The next day, Manthos was sent an accommodation request form to be completed within two weeks. Before the deadline, Manthos's attorney sent a letter to the library requesting accommodation and also requesting permission to return to work. Manthos returned the accommodation form the day before the deadline. He described his conditions and requested a desk job, identifying four specific positions he thought he could adequately fill.

One day after submitting the accommodation request, Manthos sent a letter requesting credit for the time taken since March 14 – the date about two weeks earlier that he was involuntarily sent home from work. The letter informed the library that he had heart surgery scheduled for April 26. He also gave the dates of his children's graduations, which he said he would be attending. Manthos underwent the scheduled surgery.

On April 26, the library director sent Manthos a letter directing that he meet with a Jefferson Parish physician. The stated purpose of the meeting was for the doctor to evaluate Manthos and determine his ability to perform essential job functions. The letter explained that any failure to attend the evaluation or otherwise comply with the letter would "constitute acts of insubordination and [would] result in disciplinary action up to and including termination." The meeting was set for May 5, the day Manthos said he was to attend a graduation. Manthos claimed he attempted to reschedule the evaluation but was ignored.

Manthos filed an EEOC complaint on April 28, alleging that the library was discriminating against him due to his disability. The next day he wrote a letter to the library director. In it, he protested the treatment he had received and informed the library director of his EEOC filing. The library director did not respond. Manthos did not attend the May 5 meeting that had been scheduled with a physician for the parish.

On May 12, the library director wrote Manthos a letter, which noted that Manthos failed to meet with the physician on May 5, and reminded him that such an act constituted insubordination. The letter directed Manthos to attend a May 26 pre-disciplinary hearing: "It is imperative that you attend this meeting. Your failure to attend as directed will constitute a waiver of your opportunity to present your side of the story relative to the issues I intend to discuss . . . ." Manthos did not attend the May 26 meeting. He claimed that he

thought his attendance would be futile and that the EEOC mediation was the appropriate venue for dealing with the library.

On June 6, the library director formally terminated Manthos. This was the same day that the library director received the actual earlier filed charge of discrimination from the EEOC. The stated justifications provided by Jefferson Parish for Manthos's discharge were his failure to attend the May 5 appointment with the Jefferson Parish physician and his failure to attend the May 26 pre-disciplinary hearing. Manthos filed a second EEOC complaint on July 28. It alleged that he was terminated for engaging in protected activities.

Upon termination, Manthos elected to participate in the COBRA insurance program, which is administered by COBRA Professional, Inc. ("CPI"). In its initial June 13, 2006 letter to Manthos, CPI informed him that he was eligible for benefits, effective two weeks earlier. It also instructed Manthos to complete an enclosed enrollment form no later than August 11. Manthos met that deadline. CPI acknowledged receipt of the enrollment form and informed Manthos that, in order for enrollment to be effective, it required a certain payment amount by August 4. Manthos submitted a payment, acknowledged by CPI, that brought Manthos current until the end of June. To complete enrollment, though, a further payment was still required before August 4, but none was made by that date.

On August 8, Manthos contacted CPI to make payment arrangements. According to Manthos, he was unaware that he had not made all the payments necessary to complete enrollment. He said he thought that his next premium amount was due on September 1. CPI informed him otherwise, explaining that his policy had lapsed a day earlier, on August 7. CPI also informed Manthos that his former employer, Jefferson Parish, had discretion to decide if a late payment would be accepted.

4

Manthos then contacted the library's Benefits Administrator, Aubrey Devillier. He purportedly told Manthos that Jefferson Parish occasionally accepted late payments, but a doctor's corroboration of the circumstances causing the late payment was required. Manthos explained that he had been assaulted around July 11, 2006, and that he suffered from memory loss, drowsiness, confusion, and behavioral changes. Manthos later obtained a letter from his treating physician to the same effect.

On August 21, Manthos's attorney sent a late COBRA payment, along with an explanation regarding Manthos's medical justification for the late payment. By letter dated August 24, CPI denied Manthos's request for reinstatement of benefits, explaining that Jefferson Parish refused to accept the late payment. On October 20, Manthos filed a third EEOC complaint, this time alleging that his COBRA benefits were cancelled in retaliation for the earlier filed EEOC complaints.

On March 15, 2007, Manthos filed suit in the district court. He brought various state and federal law claims, including claims that the library discharged him and refused to accept his COBRA payment in retaliation for his EEOC filings. The district court granted summary judgment with respect to the retaliatory discharge claim. At the trial, after both parties rested, the court granted Jefferson Parish judgment as a matter of law with respect to the COBRA retaliation claim. Remaining claims were submitted to the jury, which rendered a unanimous verdict in Jefferson Parish's favor.

## DISCUSSION

### A. The Retaliatory Discharge Claim

Manthos contends that the district court erred in granting summary judgment on his retaliatory discharge claim. We review the district court's grant of summary judgment *de novo*. *XL Specialty Ins. Co. v. Kiewit Offshore Servs., Ltd.*, 513 F.3d 146, 149 (5th Cir. 2008). Summary judgment is appropriate only

when the record reflects "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To determine whether a genuine issue of material fact exists, "we view facts and inferences in the light most favorable to the nonmoving party." *Mahaffey v. Gen. Sec. Ins. Co.*, 543 F.3d 738, 740 (5th Cir. 2008).

Jefferson Parish presented evidence of non-discriminatory reasons supporting termination. Manthos needed to show a genuine issue of material fact as to whether these reasons were pretextual. *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 316-17 (5th Cir. 2007). To raise an inference of pretext in the face of an employer's nonretaliatory explanation, a plaintiff "must produce substantial evidence of pretext." *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402-03 (5th Cir. 2001). Pretext may be established "by showing that a discriminatory motive more likely motivated [an] employer's decision, such as through evidence of disparate treatment, or that [the employer's] explanation is unworthy of credence." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) (quotations and citations omitted).

The valid cause alleged by Jefferson Parish included Manthos's failure to attend the scheduled meeting with the physician even after being warned that failure to attend would be an act of insubordination possibly resulting in termination. Further, Manthos did not attend a subsequent meeting to explain his absence from the physician's meeting, even though he was told that the attendance was "imperative" and would be his opportunity to explain the prior absence. Jefferson Parish had a valid reason to terminate Manthos. We find no evidence that Jefferson Parish's explanation was not credible, that there was disparate treatment, or any other evidence that the reason for his termination was pretextual.

Summary judgment on the retaliatory discharge claim was proper.

*B. The COBRA Retaliation Claim*

After both sides rested at trial, the district court granted Jefferson Parish's motion for judgment as a matter of law with respect to the retaliation claim regarding COBRA. We review the district court's ruling *de novo. Wallace*, 271 F.3d at 218.

A motion for judgment as a matter of law should be granted when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . ." Fed. R. Civ. P. 50(a). No legally sufficient evidentiary basis exists when "the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict." *Wallace*, 271 F.3d at 219 (citation and quotation marks omitted).

Here, the court found that no causal connection existed between the filing of Manthos's EEOC complaint and the decision not to reinstate the COBRA benefits. A plaintiff can establish a causal link by showing that "the employer's decision . . . was based in part on knowledge of the employee's protected activity." *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001) (internal quotation marks and citation omitted).

Jefferson Parish has presented direct evidence that the decision-maker regarding the COBRA benefit reinstatement, Aubrey Devillier, was unaware of Manthos's EEOC filing. At trial, Devillier testified that, prior to deciding not to accept the late payment, he had no knowledge of Manthos's EEOC filings. The circumstantial evidence proffered by Manthos does not seem to undermine Devillier's sworn testimony. Therefore, the district court properly granted judgment as a matter of law.

*C. Exclusion of Newspaper Articles*

Before trial, Jefferson Parish filed a motion in limine, seeking to exclude two newspaper articles concerning the library director's past job performance. These were allegedly relevant because the director's motives for the termination were in issue. The district court granted the motion but also stated that it might reconsider at trial if Manthos presented other evidence on the issue. At trial, all evidence regarding the director's job performance was excluded.

An evidentiary ruling is reviewed for an abuse of discretion. *United States v. Powers*, 168 F.3d 741, 748 (5th Cir. 1999). "Generally, an abuse of discretion only occurs where no reasonable person could take the view adopted by the trial court. If reasonable persons could differ, no abuse of discretion can be found." *Dawson v. United States*, 68 F.3d 886, 896 (5th Cir. 1995).

The district court based its ruling on Federal Rule of Evidence 403. That rule provides that even relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

A reasonable person could conclude that the newspaper articles were not relevant to Manthos's claims. There was no abuse of discretion.

For the foregoing reasons, we AFFIRM.