McClendon, j.
|3This is an appeal from the granting of and denial of motions for summary judgment on the issue of insurance coverage. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
On January 17, 2008, an automobile accident occurred between a 2002 Lincoln Town Car being driven by Lewis Jurey, one of the plaintiffs, and a 2001 Peterbilt Tractor, which was pulling a 50' flatbed trailer, being driven by Harry T. Kemp, a named defendant. At the time of the accident, Kemp was leaving Baker Metal Works where he had just picked up the flatbed trailer.
Kemp was an independent contractor with Dallas & Mavis Specialized Carrier Co., LLC (D & M). D & M, through a policy issued by Liberty Mutual Fire Insurance Company (Liberty Mutual), maintained coverage for the operation of the tractor while Kemp was engaged in performing transportation services for D & M. As an independent contractor, Kemp was responsible for maintaining non-truck *85 ing liability (“bobtail”)[1] insurance for operation of the equipment outside the scope of performing transportation services for D & M. The Great American Insurance Company (Great American) provided Kemp “bobtail” coverage.
In consolidated actions, Lewis Jurey and his guest passengers, Clarence Jurey and Dorothy Jurey, filed suit, alleging that they sustained bodily injuries in the accident. They named Kemp, D & M, Liberty Mutual, and Great American, among others, as defendants.
Thereafter, Liberty Mutual filed a motion for declaratory relief, or in the alternative, a motion for summary judgment, asserting that its policy did not provide coverage because Kemp was not engaged in performing transportation services for D & M and that the bobtail policy issued by Great American should apply. D & M also filed a motion for summary judgment, asserting that Kemp was not in the course and scope of his employment at the time of the accident, and, |4as such, D & M was not vicariously liable for Kemp’s negligence. In response, Great American filed a cross-motion for summary judgment, alleging that Kemp was involved in transportation services for D & M at the time of the accident such that the policy issued by Liberty Mutual, rather than its “bobtail” policy, provided coverage for the accident.
Following a hearing, the trial court granted the motions for summary judgment filed by Liberty Mutual and D & M, and denied the cross-motions filed by Great American. In so ruling, the trial court indicated that Kemp was “not making a haul for [D & M]” nor was he “on duty or under any dispatch” at the time of the accident, but rather was “on his own time.” The trial court further indicated that this accident is “exactly what the bobtail [policy issued by Great American] is required to cover and what it’s intended to cover.”
Great American and plaintiffs (hereinafter collectively referred to as “Great American”) have appealed, assigning the following errors:
A. The Trial Court erred in granting summary judgment in favor of Liberty Mutual Fire [Insurance] Company on the basis that Kemp was not involved in transportation duties at the time of the Accident.
B. The Trial Court erred in denying summary judgment in favor of Great American Insurance Company.
C. The Trial Court erred in concluding that Great American Insurance Company, and not Liberty Mutual Fire [Insurance] Company, provides liability insurance with respect to the Accident in light of the numerous genuine issues of material fact.[2]
DISCUSSION
Liberty Mutual issued an insurance policy (number AI2-791-001377-107) to Transport Industries, L.P., and pursuant to a Named Insured Endorsement, added D & M to Item 1 of the Declarations as a named insured. The Liberty Mutual poli *86 cy providing coverage to D & M provides, in pertinent part:
1. Who is An Insured
|sThe following are “insureds”:
a. You for any covered “auto”.
b. Anyone else while using with your express or implied[3] permission a covered “auto” you own, hire or borrow, except:
(1) The owner, or any “employee”, agent or driver of the owner, or anyone else from whom you hire or borrow a covered “auto”.
(2) Your “employee” or agent if the covered “auto” is owned by that “employee” or agent or a member of his or her household.
* * *
c. The owner or anyone else from whom you hire or borrow a covered “auto” that is a “trailer” while the “trailer” is connected to another covered “auto” that is a power unit, or, if not connected, is being used exclusively in your business.
d. The lessor of a covered “auto” that is not a “trailer” or any “employee”, agent, or driver of the lessor while the “auto” is leased to you under a written agreement if the written agreement does not require the lessor to hold you harmless and then only when the leased “auto” is used in your business as a “motor carrier” for hire.
e. Anyone liable for the conduct of an “insured” described above but only to the extent of that liability.
At the time of the accident, the parties do not dispute that Kemp’s tractor was leased to D & M pursuant to a lease agreement between the parties. The parties, however, disagree as to whether the flatbed trailer was included in the lease. Even assuming that the trailer was part of the lease, in order for the Liberty Mutual policy to provide coverage, subsection (c) referenced above requires that the trailer must be connected to a “covered auto.” Therefore, in determining whether Liberty Mutual afforded coverage for the accident at issue, the initial inquiry is whether the tractor was a “covered auto” — i.e., whether Kemp ^was using the tractor in D & M’s business as required under subsection (d) referenced above at the time of the accident.[4]
The language in the policy requiring that the covered auto be “used in your business” is unambiguous. Although the application of the endorsement to these facts may pose difficult questions, the difficulty of the questions does not create an ambiguity. Mahaffey v. General Sec. Ins. Co., 543 F.3d 738, 741 (5th Cir.2008).[5] Because the language is unambiguous, the issue is properly resolved as a matter of law on a motion for summary judgment. Id.
At the time of the accident, Kemp was off-duty and was not in the process of performing any transportation services for D & M when he decided to pick the trailer up from Baker Metal Works in order to free up space in the shop for Baker Metal Works’ owner. Kemp was not under D & M’s control or on standby for any deliver *87 ies and was free to go where he pleased.[6] In addition, Kemp was not paid for his trip to or from Baker Metal Works and did not request or seek any reimbursement or payment in connection with this trip.
Appellants contend that at the time of the accident, however, Kemp was on a trip for the business of D & M because he was having requisite maintenance performed on the trailer. Appellants note that the lease agreement required Kemp to “maintain the Equipment in proper operating condition and in full compliance with applicable governmental regulations.” A few days prior to the accident, Kemp had taken the trailer to Baker Metal Works to have a door welded on the front, so it would be easier to access the wiring for the trailer’s lights and air lines for the trailer’s brakes. Baker Metal Works also replaced some of the decking boards on the trailer. Kemp testified that it was important for him to maintain his equipment pursuant to the terms of the lease and in order to 17maintain a good working relationship with D & M. Kemp concludes that Liberty Mutual’s policy provides coverage because he was maintaining the equipment in accord with the terms of the lease agreement as required by D & M.
Several pertinent cases have addressed whether an independent truck owner/lessor was “in the business of’ the motor carrierfiessee such that the liability insurance secured by a motor carrier/lessee, as opposed to the bobtail insurance secured by a truck owner/lessor, should apply. In LeBlanc v. Bailey, 97-0388 (La.App. 4 Cir. 10/1/97), 700 So.2d 1311, writ denied, 97-2988 (La.2/6/98), 709 So.2d 743, the fourth circuit found that an independent trucker’s drive home after completion of his deliveries for the day on behalf of the motor carrier/lessee was more of a personal nature rather than a work-related function such that bobtail insurance coverage, as opposed to the liability insurance secured by the motor carrier/lessee, was the primary policy that applied.[7] In Mahaffey, 543 F.3d at 743, however, the federal court, applying Louisiana law, found that the bobtail insurance policy did not provide coverage where an independent truck driver had been asked to remain in the area of the motor carrier/lessee’s business to be available to pick up a load when one became available.[8] See also Robinson v. Guillot, 07-1260 (La.App. 3 Cir. 4/30/08), 980 So.2d 906 (unpublished), writ denied, 08-1162 (La.9/19/08) 992 So.2d 943. However, we have found no Louisiana case specifically addressing the question of when having leased equipment serviced falls within the scope of the business of the carrier. Assuming, without deciding, that the trailer was included in the lease, we must determine as a matter of law whether Kemp’s trip to and from Baker | sMetal Works to have the work performed on the *88 trailer constituted the business of D & M. The facts here are undisputed.
In this context, the proper inquiry is whether Kemp was acting within the scope of the lease agreement with D & M. See National Continental Ins. Co. v. Empire Fire & Marine Ins. Co., 157 F.3d 610, 612 (8th Cir.1998). To the extent that Kemp was executing his contractual duties, he would be acting “in the business of’ D & M. Id. We must therefore examine the terms of the lease to ascertain whether Kemp was fulfilling a contractual duty in having the work performed by Baker Metal Works.
The lease agreement required Kemp to “maintain the Equipment in proper operating condition and in full compliance with applicable governmental regulations.” Kemp acknowledged that adding the welded door to his trailer was not required by Department of Transportation (“DOT”) specifications or by D & M. He further indicated that the door provided no economic benefit to D & M, but rather was something he wanted to have done for his own benefit. Kemp also indicated that he chose to have some of the decking boards replaced, although the work was not required by DOT or by D & M. Nothing in the record explains how any of the work performed on the trailer furthered D & M’s business. Moreover, Kemp acknowledged that prior to the accident, D & M was unaware that he was having any work done to the trailer. In light of the foregoing, there is no showing that the improvements were required under the terms of the lease agreement between Kemp and D & M. Rather, it appears that these improvements were merely done for the convenience of the owner. Cf. Freed v. Travelers, 300 F.2d 395 (7th Cir.1962) InCwherein the carrier/lessee’s insurance policy applied when the independent truck driver was involved in an accident while bringing the vehicle to be serviced-when the lease agreement required the independent truck driver to maintain the tractor “in good running order and condition” and “hold (it) ready at all times for the services of the Lessee” and the carrier/lessee did not urge that the major repair to the rear of the tractor was not necessary to its continued operation) and National Continental Ins. Co., 157 F.3d 610 (wherein the carrier/lessee’s insurance policy applied when the service contract required the driver’s tractor pass periodic inspections and comply with federal standards such that driving the vehicle to a shop for a front end alignment between dispatch orders was “in the business of’ the earrier/lessee because the federal regulations required “[a]ll axles ... be in proper alignment”). Unlike the contrasted cases, under the terms of the lease agreement here, Kemp’s trip to Baker Metal Works was not undertaken in the business of the employer.[9]
Appellants also urge that the Federal Motor Carrier Safety Act-90 Endorsement applies herein. See 49 U.S.C.A. § 13501, *89 et seq. However, the endorsement only applies to interstate travel and does not apply to the intrastate trip at issue herein. See 49 U.S.C.A. § 13501, 1 and Branson v. MGA Ins. Co., Inc., 673 So.2d 89 (Fla.App. 5 Dist.), review denied, 680 So.2d 421 (Fla.1996).
CONCLUSION
In light of the foregoing, we conclude that the trial court did not err in granting summary judgment in favor of Liberty Mutual and denying summary judgment as to Great American. Therefore, we affirm the district court’s September 17, 2010 judgment. Costs of this appeal are assessed to The Great American Insurance Company.
AFFIRMED.
WELCH, J., dissent and assigns reasons.

. "Bobtailing” is a term generally used in the trucking industry to describe a tractor being operated without a trailer.

. Great American has not appealed the summary judgment granted in favor of D & M. Liberty Mutual avers that because the trial court granted D & M’s motion for summary judgment and found that Kemp was not performing services for D & M at the time of the accident, review of that issue is precluded on appeal pursuant to LSA-R.S. 13:4231(3) insofar as that judgment is now final. However, under the circumstances presented herein, we find it unnecessary to address this issue.

. The “express or implied” language is added by the Louisiana Change endorsement.

. Similarly, we note that the bobtail policy issued to Kemp by Great American does not provide coverage if the “covered auto” was being used "for the benefit of or to further the commercial interest of [D & M]“ or "while being used for the purpose of traveling to or from any location where the covered auto is regularly garaged or any terminal or facility of [D & M]."

.The contractual language at issue in Mahaf-fey was "in the business of.”

. Kemp indicated that he had originally planned to go to a farmer's meeting, but instead chose to go to Baker Metal Works to retrieve the trailer.

. The court also noted that the driver was free to go where he pleased, was not subject to the motor carrier/lessee’s control or paid for his time or mileage, and was not under dispatch or standby for further deliveries. LeBlanc, 700 So.2d at 1314.

. In Mahaffey, the trucker was involved in an accident driving to his motel. The court noted that unlike driving home after completing deliveries as was the driver in LeBlanc, the driver in Mahaffey was "driving to a motel far from home in order to sleep to be adequately rested, when asked to remain in the area to see if a load becomes available,” which the court found "is a work-related function for a commercial driver because commercial drivers are required to have a certain number of rest hours between hauls.” Mahaffey, 543 F.3d at 743.

. Additionally, we note that the maintenance on Kemp's trailer had been completed and he was returning home at the time of the accident. Cf. Empire Fire and Marine Ins. Co. v. Liberty Mut. Ins. Co., 117 Md.App. 72, 699 A.2d 482, cert. denied, 348 Md. 206, 703 A.2d 148 (1997), wherein the lease agreement between the independent truck driver and the motor carrier/lessee required the truck driver to maintain "all additions, accessories, and equipment ... in good safe operating and mechanical condition.” Empire Fire and Marine Ins. Co., 699 A.2d at 488. The court found that even if the trucker's stop at a dealership to obtain parts for a toolbox attached to the exterior of the leased tractor was in "furthering the business of the ... carrier, once he purchased the parts for the toolbox, his business with the ... carrier was complete. He was in the area of his ‘home terminal’ and heading home.” 699 A.2d at 496-97.